**THIS VERSION OF THE OPINION INCLUDES THE AUGUST 9, 2012, ERRATA**

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 10-3402

BERNADINE ACEVEDO, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 25, 2012                                    Decided July 9, 2012)

*Robert V. Chisholm*, with whom *Zachary M. Stolz*, *Myung Kim Reeder*, and *Alexandra O. Lio* were on the briefs, all of Providence, Rhode Island, for the appellant.

*Bryan W. Thompson*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Joan E. Moriarty*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, *Chief Judge*, and MOORMAN and LANCE, *Judges*.

LANCE, *Judge*: The appellant, Bernadine Acevedo, appeals through counsel that portion of a September 9, 2010, decision of the Board of Veterans' Appeals (Board) that denied her claim for entitlement to service connection for an acquired psychiatric disorder, to include post-traumatic stress disorder (PTSD). The appellant does not present any argument concerning the denial of her claims for entitlement to service connection for sickle cell trait; asbestosis; a right shoulder disability; and arthritis of the arms, shoulder, ankles, and neck. Accordingly, the Court deems those claims abandoned and will not review them. *See Ford v. Gober*, 10 Vet.App. 531, 535 (1997); *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993). The parties each filed briefs, and the appellant filed a reply brief. Thereafter, the Court heard oral arguments. For the reasons that follow, that portion of the Board's September 9, 2010, decision that is on appeal will be affirmed.

## I. FACTS

The appellant served on active duty in the U.S. Army from October 1978 to September 1988, when she was discharged for misconduct after testing positive for marijuana use. Record (R.) at 614, 1339-77. Before discharge from service, the appellant was treated for a suicide attempt after "taking a handful of Atarax tablets." R. at 1901-02. Her service medical records (SMRs) indicate that, following the suicide attempt, she was diagnosed with adjustment disorder associated with her positive urinalysis, the stress of being a "snitch" for the Criminal Investigation Command, and her impending discharge. R. at 1901-02; *see also* R. at 1812-13, 1816.

Over a decade later, in September 2000, the appellant filed an informal claim for service connection for a psychiatric disorder. R. at 1273. In her informal claim, and in later-submitted personal statements and medical examinations, the appellant asserted that during basic training, in 1978, she was sexually harassed by three drill sergeants and that, when she reported the harassment to the senior drill sergeant, the senior drill sergeant seduced her into having a sexual relationship with him in exchange for protection from the other drill sergeants. *See*, *e.g.*, R. at 118-20, 917-25, 1262-64, 1273. The appellant asserted that, after post-service brain surgery in 1996, her memories of sexual harassment and assault returned and, as a result, she suffers from depression, nightmares, flashbacks, and intrusive thoughts. *See*, *e.g.*, R. at 1235.

The record shows that the appellant received a VA mental disorders examination in February 2001 in which the examiner diagnosed her with major depressive disorder and PTSD but did not provide a nexus opinion. R. at 1235-39. The record also contains a June 2008 letter from the appellant's VA psychologist in which the psychologist diagnosed the appellant with PTSD as a result of sexual harassment and assault by her basic training drill sergeants. R. at 151-52. The psychologist stated that the appellant "indicates a history of symptoms consistent with a diagnosis of [PTSD] and presents with those symptoms at this time" but did not describe the symptoms. R. at 152.

The appellant received a second VA mental disorders examination in November 2008. R. at 115-26. The examiner noted that he spent four hours reviewing the appellant's entire eight-inch claims file, one hour reviewing the electronic medical records, and one-and-a-half hours interviewing the appellant. R. at 116. The examiner recorded the appellant's assertions that her current

psychiatric condition did not develop until after her 1996 surgery, her description of her nightmares as involving hand-to-hand combat with unknown people that did not correspond to any in-service incident, and the lack of any reference to nightmares involving the sexual assaults. R. at 122-23. The examiner concluded that a diagnosis of PTSD was not warranted because the appellant's nightmares, as described to him, were not "thematically related to any perceived traumatic sexual relationship" and did "not even include the alleged perpetrator." R. at 125.

The 2008 VA examiner diagnosed the appellant with major depressive disorder. R. at 124. In a January 2009 addendum, the examiner clarified that it was "not at all likely that [the appellant's] major depression that started many years after she was in the military service is causally or specifically related to events that happened to her during . . . military service." R. at 114.

The Board concluded that the 2008 VA examination report was the most probative of the examinations in the record because that examiner was the only one who indicated that he had conducted a thorough review of the appellant's claims file and was a board-certified psychiatrist. R. at 27, 29. The Board also acknowledged that the appellant, a nurse, had some medical training, but concluded that the 2008 VA examiner had more expertise relevant to diagnosing the appellant's condition and opining as to its etiology. R. at 29. The Board determined, based on the 2008 VA examination and 2009 addendum (hereinafter "2008 VA examination"), that the appellant did not have a current diagnosis of PTSD and that the appellant's diagnosed depression was not related to service. R. at 27, 29. This appeal followed.

## II. ARGUMENTS

The appellant argues that the Board should have applied 38 C.F.R. § 3.304(f)(3), which lessens the evidentiary burden on claimants who allege entitlement to service connection for PTSD based on a stressor "related to the veteran's fear of hostile military or terrorist activity," rather than § 3.304(f)(5), to her claim for PTSD as a result of military sexual trauma (MST). Appellant's (App.) Brief (Br.) at 8-13.[1] The appellant also argues that the 2008 VA examination was inadequate, that

---

[1] At oral argument, counsel for the appellant stated that the appellant was abandoning any claim to benefits through the application of § 3.304(f)(5).

the Board failed to develop a claim for service connection for her diagnosed depression, and that the Board provided an inadequate statement of reasons or bases to support its analysis. *Id.* at 15-20.

The Secretary counters that the appellant's argument contradicts the plain language and regulatory history of §§ 3.304(f)(3) and (5) and that the Board applied the correct standard to the appellant's claim. Secretary's (Sec'y) Br. at 7-12. The Secretary also asserts that the 2008 VA examination was adequate for rating purposes and that the Board's statement of reasons or bases was adequate, and he requests that the Court affirm the Board's September 9, 2010, decision.

**III. ANALYSIS**

A. Application of 38 C.F.R. § 3.304(f)(3) to PTSD Claims Based on MST

The requirements for establishing service connection for PTSD are outlined in 38 C.F.R. § 3.304(f). In general, establishing service connection for PTSD requires (1) evidence of a current medical diagnosis of PTSD, (2) credible supporting evidence that the claimed in-service stressor actually occurred, and (3) medical evidence that establishes a nexus between the claimed in-service stressor and the current symptomatology of the PTSD. *Id*. The regulation's subsections identify when "the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor" or when additional corroborating evidence is required. *Id*. Prior to July 13, 2010, a veteran's lay testimony alone was potentially sufficient to establish a claimed stressor only when the veteran was diagnosed with PTSD in service, alleged a stressor related to and consistent with documented prisoner-of-war (POW) experience, or alleged a stressor related to and consistent with documented engagement in combat. *Id*.

In 2009 VA proposed an amendment to this regulation that would "reduce the burden of showing the occurrence of an in-service stressor if the claimed stressor is related to fear of hostile military or terrorist activity, and is consistent with the places, types, and circumstances of the veteran's service." Stressor Determinations for Posttraumatic Stress Disorder, 74 Fed. Reg. 42,617, 42,618 (Aug. 24, 2009) (proposed rule); *see Nat'l Org. of Veterans' Advocates v. Sec'y of Veterans Affairs*, 669 F.3d 1340, 1344 (Fed. Cir. 2012). The proposed amendment was intended to address findings from the National Academies' Institute of Medicine (IOM), which observed that allowing only those service members who engaged in traditional combat to rely on their own lay testimony

4

was inconsistent with the increase in hostile military activities that deployed non-combat personnel encounter as military conflicts have evolved away from defined front lines toward insurgent and guerilla warfare. 74 Fed. Reg. at 42,618 (citing INST. OF MED. OF THE NAT'L ACAD., GULF WAR AND HEALTH, PHYSIOLOGIC, PSYCHOLOGIC, AND PSYCHOSOCIAL EFFECTS OF DEPLOYMENT-RELATED STRESS, 2 (2008)).  The IOM identified several potentially "potent stressors" that any military personnel deployed to a war zone might face, regardless of combat status, such as "'constant vigilance against unexpected attack, the absence of a defined front line, the difficulty of distinguishing enemy combatants from civilians, [and] the ubiquity of improvised explosive devices.'" *Id*.

The revision to 38 C.F.R. § 3.304(f), effective July 13, 2010, included a new subsection (f)(3), which states:

> If a stressor claimed by a veteran is related to the veteran's fear of hostile military or terrorist activity and a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of posttraumatic stress disorder and that the veteran's symptoms are related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, and provided the claimed stressor is consistent with the places, types, and circumstances of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor.  For purposes of this paragraph, "fear of hostile military or terrorist activity" means that a veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror.

As part of the revision process, the subsection addressing personal assaults, including MST, was renumbered as (f)(5), which states:

> If a posttraumatic stress disorder claim is based on in-service personal assault, evidence from sources other than the veteran's service records may corroborate the veteran's account of the stressor incident.  Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates,

fellow service members, or clergy. Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance; substance abuse; episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. VA will not deny a post-traumatic stress disorder claim that is based on in-service personal assault without first advising the claimant that evidence from sources other than the veteran's service records or evidence of behavior changes may constitute credible supporting evidence of the stressor and allowing him or her the opportunity to furnish this type of evidence or advise VA of potential sources of such evidence. VA may submit any evidence that it receives to an appropriate medical or mental health professional for an opinion as to whether it indicates that a personal assault occurred.

Thus, if VA evaluates a veteran's claimed stressor under subsection (f)(3), her lay testimony alone may be sufficient to establish the occurrence of that stressor if the stressor is consistent with her service and a VA psychiatrist or psychologist opines that the stressor is adequate to support a diagnosis of PTSD. 38 C.F.R. § 3.304(f)(3) (2012). However, if VA evaluates a veteran's claimed stressor under subsection (f)(5), her lay testimony must be corroborated by other evidence to establish the occurrence of the stressor. § 3.304(f)(5); *see Menegassi v. Shinseki*, 638 F.3d 1379, 1382 (Fed. Cir. 2011).

The Court reviews VA's interpretation of statutes and regulations de novo. *See Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003) ("[I]nterpretation of a statute or regulation is a question of law . . . ."); *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (stating that the Court reviews "questions of law de novo without any deference to the [Board's] conclusions of law"). "'Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure.'" *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1328 (Fed. Cir. 2005)). Statutory terms are interpreted "'in their context and with a view to their place in the overall statutory scheme.'" *Tyler v. Cain*, 533 U.S. 656, 662 (2001) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

### 1. The Plain Meaning of Subsection (f)(3)

The appellant contends that her in-service stressors are "related to her fear of hostile military activity" because (f)(3) defines that phrase to mean "that a veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others . . . ." App. Br. at 11 (quoting § 3.304(f)(3)). She argues that the sexual harassment and assault she experienced in service satisfy this definition. However, this interpretation of § 3.304(f)(3) contradicts the plain meaning of §§ 3.304(f)(3) and (5).

First, § 3.304(f)(3) defines "fear of hostile military or terrorist activity" as deriving from "an event or circumstances . . . such as . . . an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft." While it is well established that "such as" indicates that the subsequent examples are not an exhaustive list, the Court finds it significant that the examples provided all involve actions originating from individuals who commit hostile military or terrorist acts toward the U.S. military, not nefarious, or even criminal, acts of one service member directed at another service member. *See Mauerhan v. Principi*, 16 Vet.App. 436, 442 (2002).

In addition, the list of examples provides some context in which to understand the plain meaning of the phrase "hostile military or terrorist activity." *See Tyler*, *supra*. Here, although every assault, regardless of the participants or the context, could be labeled "hostile," the list of examples clearly indicates that the term carries a more limited definition here. *See*, *e.g.,* 38 C.F.R. § 3.1(y)(5) (defining "hostile force" as an entity "whose actions are taken to further or enhance anti-American military, political or economic objectives or views, or to attempt to embarrass the United States").

Hostile criminal actions, like the sexual assault asserted here, of U.S. military personnel directed against other U.S. military personnel are contemplated under the in-service personal assault provisions of subsection (f)(5). Thus, the Court discerns no merit in the argument that, despite no language plainly supporting such an interpretation, subsection (f)(3) should be interpreted to accommodate the circumstances asserted here. *See Glover v. West*, 185 F.3d 1328, 1332 (Fed. Cir. 1999) (noting that regulatory interpretation should "attempt to give full effect to all words contained

within that statute or regulation, thereby rendering superfluous as little of the statutory or regulatory language as possible").

## 2. The Regulatory History of Subsection (f)(3)

Although the plain language of the regulation does not support the appellant's proposed interpretation, the Court will review the regulatory history to determine whether it reveals an intent that is inconsistent with the plain language of the regulation and the agency's interpretation thereof. *Cf. Glaxo Operations U.K. Ltd. v. Quigg*, 894 F.2d 392, 395 (Fed. Cir. 1990) ("[E]ven when the plain meaning of the statutory language in question would resolve the issue before the court, the legislative history should usually be examined at least 'to determine whether there is a *clearly expressed* legislative intention contrary to the statutory language.'" (quoting and adding emphasis to *Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 629 (Fed. Cir. 1989))).

An agency's interpretation of its own regulations is controlling unless it is "'plainly erroneous or inconsistent with the regulations.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)). Furthermore, "[d]eference to an agency's interpretation of its own regulations is broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress's intentions, while in the former it is addressing its own." *Cathedral Candle Co. v. U.S. Int'l. Trade Comm'n*, 400 F.3d 1352, 1363-64 (Fed. Cir. 2005).

The comments accompanying the regulatory revision proposal specify that it was VA's intent to liberalize the stressor occurrence confirmation requirements for military personnel who are deployed to war zones and who, although not assigned to or engaging in actual front-line combat, nonetheless are faced with significant combat-like stressors in an era of increased insurgent and guerilla warfare. 74 Fed. Reg. 42,617; *see Nat'l Org. of Veterans' Advocates*, 669 F.3d at 1344 ("The VA explained that the rule was 'intended to acknowledge the inherently stressful nature' of serving where 'hostile military or terrorist activities [are] ongoing.'"). Additionally, the comments accompanying the final rule clearly note that "VA also received comments suggesting that the rule should cover stressors such as MST" before concluding that "[t]hese comments are outside the scope of this rule" and that MST is instead addressed in 38 C.F.R. § 3.304(f)(5). Stressor Determinations for Posttraumatic Stress Disorder, 75 Fed. Reg. 39,843 (July 13, 2010) (Final rule). The Secretary's

8

interpretation of his revised regulation and expressed intent in promulgating § 3.304(f)(5) is consistent with the regulation's plain language. *See Glaxco*, *supra*.

To the extent that the appellant argues that the comments to the final rule regarding the requirement that the stressor be consistent with the places, types, and circumstances of the claimant's service support her interpretation, that argument is likewise unavailing. App. Br. at 11. While it is true that VA declined to limit the application of the rule to veterans who served in a combat zone and declined to limit the application "to events or circumstances perpetrated by a foreign enemy," it nevertheless remains a requirement that the underlying stressor be related to a fear of hostile military or terrorist activity.

The appellant's proposed interpretation of paragraph (f)(3) is opposed by both the plain meaning of the regulation and the agency's interpretation and expressed intent in promulgating it. Furthermore, the appellant's interpretation—which only requires that a veteran be confronted with a threat to her physical integrity—essentially reads out the requirement that the veteran's fear be based on hostile military or terrorist activity.

Neither the language of § 3.304(f) nor its regulatory history suggests that VA is precluded from evaluating a claimed stressor, such as the appellant's MST, under either subsection (f)(3) or (f)(5). Simply because subsection (f)(5) was designed to address in-service personal assaults does not preclude VA from evaluating in-service personal assaults under subsection (f)(3) as long as the circumstances are such that the veteran's claimed stressor is related to her "fear of hostile military or terrorist activity."[2] *See Glover, supra.* Because the appellant's proposed interpretation of paragraph (f)(3) is contrary to the plain meaning of the regulation and the agency's interpretation and express intent in promulgating it, the Court concludes that the reduced evidentiary burden of subsection (f)(3) is not applicable to the appellant's claim based on her bare assertion that her stressors are related to her fear of hostile military activity.

---

[2] The Court does not reach the question of whether assault by one service member upon another could ever qualify for application of subsection (f)(3), although an example of circumstances that might raise such a question was the shooting of fellow service members and bystanders by an Army major at Fort Hood, Texas.

B.  Adequacy of 2008 VA Examination

The appellant argues that the 2008 VA examination inadequately addressed whether there is a nexus between her major depression and her military service.  "Whether a medical opinion is adequate is a finding of fact which this Court reviews under the 'clearly erroneous' standard of review."  *D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008).  Moreover, there is no reasons or bases requirement imposed on examiners.  Rather, an adequate medical report must rest on correct facts and reasoned medical judgment so as inform the Board on a medical question and facilitate the Board's consideration and weighing of the report against any contrary reports. *See Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 304 (2008) (holding in the context of weighing one medical opinion with another that "[i]t is the factually accurate, fully articulated, sound reasoning for the conclusion . . . that contributes probative value to a medical opinion"); *D'Aries*, 22 Vet.App. at 104 ("An opinion is adequate where it is based upon consideration of the veteran's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's 'evaluation of the claimed disability will be a fully informed one.' " (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994))); *Stefl v. Nicholson*, 21 Vet.App. 120, 124 (2007) (holding that a medical opinion "must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions").

To the extent that the summary and conclusion section of the 2008 VA examination report regarding the appellant's major depression might be viewed as concise, the report nevertheless must be read as a whole, and the Board is permitted to draw inferences based on the overall report so long as the inference does not result in a medical determination.  *See Kahana v. Shinseki*, 24 Vet.App. 428, 435 (2011).  Here, the Board noted from the 2008 VA examination report that the appellant's in-service psychiatric condition, including her suicide attempt, was related to her discharge from service and diagnosed as something other than depression and that her depression, a separate condition, did not start until many years after service, after her 1996 surgery.  Based on the record of proceedings, the Board's view of and assignment of weight to this report are plausible and not clearly erroneous.  *See D'Aries*, *supra*; *see also* R. at 114, 117, 122, 125-26.

C.  Reasons or Bases

Finally, the appellant argues that the Board provided inadequate reasons or bases when it failed to discuss service connection for her depression under theories of chronicity and continuity of symptomatology, failed to consider the favorable evidence of her in-service suicide attempt and psychiatric treatment, failed to apply 38 C.F.R. § 3.304(f)(3) to her claim, and accepted as adequate the 2008 VA examination.  App. Br. at 13-15, 20-23; App. Reply Br. at 3-4.

The appellant cites 38 C.F.R. § 3.303 for the proposition that she need merely show that her condition had its inception during service, but that is an incomplete paraphrase of the regulation. App. Br. at 17.  Section 3.303(b) provides for the establishment of service connection when a disease or injury documented in service manifests again after service through a theory of either chronicity or continuity of symptomatology.  Chronicity is established if the evidence demonstrates the existence of a chronic disease in service and present manifestations of that same disease.  *Savage v. Gober*, 10 Vet.App. 488, 495-97 (1997).  Alternatively, continuity of symptomatology may be established if the evidence demonstrates that a condition was "noted" during service; evidence of post-service continuity of the same symptomatology; and medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology.  38 C.F.R. § 3.303(b) (2012); *see Savage*, 10 Vet.App. at 495.

The appellant argues that a suicide attempt necessarily indicates that she suffered from "serious psychological issues" during service.  App. Br. at 22.  Even assuming, arguendo, that the appellant's in-service diagnosis was of a chronic condition, the record reflects that that condition was diagnosed as an adjustment disorder while her current diagnosis—and the disability for which she seeks benefits—is depression.

Furthermore, the appellant does not now identify—nor has she ever in the record before the Court—evidence of post-service continuity of the same symptomatology as noted in service.  Indeed, the appellant has consistently asserted that her current psychiatric symptoms did not manifest until after her 1996 surgery, that is, over eight years after her discharge from service.  *See*, *e.g.*, R. at 122, 1235.  Because she did not raise these theories of service connection below and they were not reasonably raised by the record, the Board did not err by not addressing them.  *See Robinson v.*

11

*Peake*, 21 Vet.App. 545, 552 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009).

The Board specifically addressed the favorable evidence highlighted by the appellant and, thus, the appellant's argument that such a discussion did not occur is meritless. R. at 23. The Court has already determined that the Board's findings with respect to the remaining allegations of error were supported by the record and now concludes that the Board's analysis was supported by an adequate statement of reasons or bases. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).

## III. CONCLUSION

After the Court's consideration of the appellant's and the Secretary's briefs, its review of the record, and its consideration of the parties' positions advanced at oral argument, that portion of the September 9, 2010, decision of the Board that is on appeal is AFFIRMED.