Citation Nr: 1331580 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 08-33 592 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUES

1. Entitlement to service connection for a right ankle disability.

2. Entitlement to service connection for a left knee disability.

3. Entitlement to service connection for a right shoulder disability.


ATTORNEY FOR THE BOARD

J. Hager, Counsel


INTRODUCTION

The Veteran served on active duty for training from September 1972 to December 1972. He also served on active duty from December 1990 to July 1991, and December 1995 to September 1996. The Veteran also performed additional Reserve service.

These matters initially came before the Board of Veterans' Appeals (Board) on appeal from a February 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana which denied entitlement to service connection for right ankle, left knee, and right shoulder disabilities.

In December 2012 and again in June 2013, the Board remanded the claims to the RO, via the Appeals Management Center (AMC), for additional development. For the reasons stated below, the RO/AMC complied with the Board's remand instructions. Stegall v. West, 11 Vet. App. 268, 271 (1998).


FINDINGS OF FACT

1. A right ankle disability was not noted at any period of entry into active duty service.

2. Clear and unmistakable evidence shows that a right ankle disability existed prior to service and clear and unmistakable evidence demonstrates that the disability was not aggravated by service.

3. A left knee disability did not manifest in service, left knee arthritis was not compensably disabling during the one year presumptive period, and a current left knee disability is unrelated to service.

4. A right shoulder disability was not noted at entry into any period of active duty service.

5. Clear and unmistakable evidence shows that right shoulder arthritis existed prior to service and clear and unmistakable evidence demonstrates that this disability was not aggravated by service.


CONCLUSIONS OF LAW

1. A right ankle disability was not incurred or aggravated during active military service. 38 U.S.C.A. §§ 1110, 1111, 1131, 5103, 5103A (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.159, 3.303, 3.304, 3.306 (2013).

2. Left knee disability was not incurred in or aggravated by service and left knee arthritis may not be presumed to have been incurred therein. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309 (2013).

3. Right ankle disability was not incurred or aggravated during active military service, and right ankle arthritis may not be presumed to have been so incurred or aggravated. 38 U.S.C.A. §§ 1110, 1111, 1131, 5103, 5103A; 38 C.F.R. §§ 3.159, 3.303, 3.304, 3.306, 3.307, 3.309 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act

The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met. There is no issue as to providing an appropriate application form or completeness of the application. VA notified the Veteran in April 2006 of the information and evidence needed to substantiate and complete a claim, to include notice of what part of that evidence is to be provided by the claimant, what part VA will attempt to obtain, and how disability ratings and effective dates are determined. The case was most recently readjudicated in July 2013.

VA fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate a claim, and as warranted by law, affording VA examinations. There is no evidence that additional records have yet to be requested, or that additional examinations are in order. As discussed below, pursuant to the Board's remand instructions, medical opinions have been obtained that are adequate to decide the claims remaining on appeal.

The Board will therefore proceed to the merits of the appeal.

Analysis

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the current disability and an in-service precipitating disease, injury or event. Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a). Consistent with this framework, service connection is warranted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Pursuant to 38 C.F.R. § 3.303(b), where a chronic disease is shown as such in service, subsequent manifestations of the same chronic disease are generally service connected. If a chronic disease is noted in service but chronicity in service is not adequately supported, a showing of continuity of symptomatology after separation is required. Entitlement to service connection based on chronicity or continuity of symptomatology pursuant to 38 C.F.R. § 3.303(b) applies only when the disability for which the Veteran is claiming compensation is due to a disease enumerated on the list of chronic diseases in 38 U.S.C.A. § 1101(3) or 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

For veterans with 90 days or more of active service during a war period or after December 31, 1946, certain chronic diseases, including arthritis, are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101(3), 1112(a)(1), 1113, 1137; 38 C.F.R. §§ 3.307(a), 3.309(a).

Every veteran is presumed to have been in sound condition at entry into service except as to defects, infirmities, or disorders noted at the time of such entry, or where clear and unmistakable evidence demonstrates that the injury or disease existed before entry and was not aggravated by such service. 38 U.S.C.A. § 1111. The burden is on VA to rebut the presumption of soundness by clear and unmistakable evidence that the veteran's disability was both preexisting and not aggravated by service. Wagner v. Principi, 370 F.3d 1089, 1094-96 (Fed. Cir. 2004).

Right ankle disability

In his December 2005 claim, the Veteran reported having an ankle disability beginning in January 1991. He argues that his ankle disability is directly attributable to active duty since he had to maintain physical fitness standards and pass fitness testing. Service treatment records do not document any specific right ankle injury.

In a report of medical history completed in July 1991, prior to release from a period of active duty, the Veteran reported difficulty with right foot dorsiflexion since his deployment. Clinical evaluation revealed normal lower extremities. Complaints related to the right ankle were not shown during his subsequent period of active service. Private medical records dated in June 2007 document various complaints, including right ankle pain radiating back up into the knee. It was noted that years ago the ankle was broken after falling off a step. The assessments included right ankle pain. The Board observes that service treatment records document a prior left ankle fracture, but do not reference any previous right ankle injuries.

In its December 2012 remand, the Board noted that it was unclear whether the Veteran's complaints could be attributed to a diagnosed disability and if so, whether such was related to active military service. The claim was therefore remanded for a VA examination and medical opinion addressing whether it is at least as likely as not that any right ankle disability is related to a period of active military service or events therein. The examiner was specifically requested to address complaints related to difficulty with dorsiflexion of the right foot in July 1991.

The January 2013 VA examiner diagnosed the Veteran with right ankle degenerative arthritis and opined that it was less like than not incurred in or caused by service. The VA examiner explained that there was no significant record of a serious ankle injury during service, but that the Veteran had stated that he injured his right ankle prior to his induction into service. The examiner thus concluded that the Veteran's right ankle degenerative changes, which he characterized as mild, were due to a 
pre-service injury.

In its June 2013 remand, the Board noted that the Veteran was presumed sound at entry into service in December 1990 because records at that time did not reveal a right ankle disorder. Hence, the opinion that the current disability was related to a pre-service injury was inadequate because the presumption of soundness could only be rebutted with clear and unmistakable evidence indicating both (1) that the disability preexisted service and (2) that the disability was not aggravated by service. The examiner's opinion did not provide sufficient evidence as to whether these criteria were satisfied. This is particularly true in light of the Veteran's complaint regarding dorsiflexion in July 1991, which suggests the possibility of aggravation. The Board thus requested a supplemental medical opinion to address whether there was clear and unmistakable evidence that the Veteran had right ankle arthritis prior to any period of active duty, i.e., prior to December 1990 or December 1995). If so, the examiner was to address whether the evidence clearly and unmistakably showed that pre-existing right ankle arthritis was not aggravated by service. The Board instructed that the examiner consider and address the complaints related to difficulty with dorsiflexion of the right foot in July 1991.

In his June 2013 supplemental opinion, the VA examiner checked the box indicating that the claimed disorder clearly and unmistakably existed prior to service, and was clearly and unmistakably not aggravated beyond its natural progression by an in-service injury, event, or illness. In the rationale section, the examiner noted that the Veteran indicated he injured his right ankle falling off of a stage during childhood sustaining a fracture, and that records indicated a preexisting injury. The examiner noted that there was no evidence of arthritis during active duty or of treatment for this condition. The examiner also indicated that the Veteran never established chronicity of care and there were no significant follow up examinations for ankle complaints in the service records. The examiner also noted that no X-rays were available at the time of induction into service. The examiner opined that the Veteran's ankle arthritis was due to natural causes and there was no history of injury or aggravation during active service.

The Board finds that the June 2013 supplemental opinion substantially complied with its June 2013 remand instructions and, along with the other evidence, is adequate to decide the claim. See Donnellan v. Shinseki, 24 Vet. App. 167, 176 (2010) ("It is substantial compliance, not absolute compliance, that is required" under Stegall). Although the examiner did not specifically mention the July 1991 notation of difficulty with dorsiflexion as instructed by the Board, the opinion as a whole, when read in context with the other evidence of record, reflects that the examiner considered all of the relevant evidence in determining that right ankle disability clearly and unmistakably preexisted service and clearly and unmistakably was not aggravated by service. Acevedo v. Shinseki, 25 Vet. App. 286, 294 (2012) (medical reports must be read as a whole and in the context of the evidence of record). 

In this regard the examiner noted the pre-service right ankle injury, the lack of evidence of arthritis or treatment for its symptoms during service and the absence of significant follow-up for ankle complaints during service. Thus, the examiner implicitly acknowledged the existence of right ankle complaints such as the difficulty with dorsiflexion in July 1991. Based on this reasoning, the examiner concluded that there was clear and unmistakable evidence that a right ankle disability preexisted service and clear and unmistakable evidence that the preexisting right ankle disability was not aggravated by service. As the examiner explained the reasons for his conclusions based on an accurate characterization of the evidence of record, his opinion is entitled to substantial probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning). There is no contrary medical opinion in the evidence of record. 

To the extent that the Veteran is competent to opine on the complex medical question of whether his preexisting right ankle disability was aggravated by service, the Board finds the specific, reasoned opinion of the VA examiner to be of greater probative weight than the Veteran's more general lay assertions.

As there is clear and unmistakable evidence that right ankle disability preexisted service and clear and unmistakable evidence that it was not aggravated by service, the presumption of soundness has been rebutted and the claim must be denied. Wagner, 370 F.3d at 1096.

Left Knee Disability

In his December 2005 claim, the Veteran reported a history of a knee disability beginning in January 1991. He argues that his disorder is directly attributable to active duty since he was required to maintain physical fitness standards to include running and jumping. In November 1976, the Veteran reported a history of a left knee injury. The lower extremities were clinically evaluated as normal. In November 1989, he reported a history of a dislocated left knee. Again, the lower extremities were described as normal on examination. At examinations in July 1991 and January 1995, the lower extremities were also reported as normal on clinical evaluation.

Several days following the Veteran's entrance on to active duty in December 1995, he underwent another physical examination. Again, no left knee abnormalities were noted. 

As no abnormalities were noted on examination at the time of entrance into active duty, the Veteran is presumed to have been sound as to his left knee. 38 U.S.C.A. § 1111. Indeed, despite the Veteran's reported history, the Board finds nothing in the record to clearly and unmistakably show that a left knee disability preexisted service. 

In August 1996, prior to separation from active duty, the Veteran reported that his health was worse than on his last examination. A history of a left knee injury was noted. Examination revealed left knee pain with flexion and extension. The examiner noted that the Veteran may need follow up at VA if the pain persisted. 

A May 1997 statement from a private orthopedist indicates that the Veteran had a chronic tear of his left anterior cruciate ligament and should not do any running. A May 2000 Reserve examination indicates that the Veteran had a chronic left anterior cruciate ligament tear. He was placed on a permanent profile of no running, jumping, crawling or stooping.

On VA examination in July 2006, the Veteran reported believing that he had dislocated his left knee as a child, although he was unable to recall an event when he actually did so. The Veteran said that he first noticed problems with his left knee approximately in the last 10 years, but denied any specific knee injury. The examiner stated that from history and examination, it appeared that the Veteran likely had some meniscal pathology. Regarding etiology, the examiner opined that the left knee problem was less likely as not caused or a result of any injury in the Veteran's service history. He stated that the Veteran did not report a specific event in which he believed he injured his left knee. The examiner opined that it sounded more like a chronic degenerative problem with a likely degenerative meniscus. 

Private medical records dated in December 2009 document the Veteran's complaints of left knee stiffness, and that he could hardly walk and it locks at times. He reportedly saw an orthopedist who said to wait until he cannot stand it. A football injury 40 years ago was noted. 

A March 2010 record documents complaints of left knee pain and indicates that the appellant had knee surgery in January 2010. 

In June 2010 the Veteran was seen for follow-up of various disabilities and the examiner commented "left knee replacement." In March 2011, the Veteran was seen with left knee swelling.

In its December 2012 remand, the Board found that the July 2006 VA medical opinion was not adequate, because the examiner apparently only considered whether the Veteran had a left knee problem related to a specific in-service injury and did not discuss the in-service complaints shown in August 1996 or consider that a chronic anterior cruciate ligament tear was shown as early as May 1997. The Board instructed that a new VA examination be provided, in which the examiner was to identify any left knee disability and opine whether it was at least as likely as not that any such disability was related to a period of active military service or events therein. In making this determination, the examiner was instructed to consider the findings in August 1996 of left knee pain with flexion and extension, as well as the May 1997 finding of a chronic anterior cruciate ligament tear. The Board also instructed that the Veteran be provided another opportunity to submit the May 1997 private orthopedist records containing a diagnosis of anterior cruciate ligament tear and also of left knee surgery, replacement or otherwise.

In January 2013, a VA examiner diagnosed the Veteran with left knee degenerative joint disease/status post total joint replacement. The examiner opined that the claimed disability was less likely than not incurred in or caused by service. 

In its June 2013 remand, the Board indicated that the examiner provided a confusing rationale. The examiner stated that the injury in service was incidental with no significant follow-up for chronic condition, but the examiner did not address the fact that the Veteran complained of left knee pain in August 1996, and was diagnosed with a chronic anterior ligament tear in May 1997, seven months later. Furthermore, the examiner pointed out that the onset of pain was gradual, was not due to a specific injury, and was one of "natural causes," but, as noted by the Board, the Veteran does not need to have had a specific injury in service to be entitled to service connection. Rather, the disability or disease may be incurred in service or of service origin, consistent with the Veteran's contention that his left knee disability was caused by repeated stress incurred while military physical fitness standards, to include running and jumping.

As the VA examiner failed to address the Veteran's primary contention, the Board found that a supplemental medical opinion was needed. The Board instructed that the examiner be asked if it was at least as likely as not that left knee degenerative joint disease had its onset during service, within one year of separation from active duty, or was otherwise caused by any incident or event that occurred during service, to include rigorous physical training (running and jumping). In rendering this opinion the examiner was to consider and address the findings in August 1996 of left knee pain with flexion and extension, as well as the May 1997 finding of a chronic anterior cruciate ligament tear.

In his June 2013 supplemental opinion, the VA examiner checked the box indicating that the claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. In the rationale section, the examiner noted that review of records did not indicate a left knee injury during active duty or aggravation during active duty from physical training. He noted that there was no record of chronicity or care or follow up during active duty. He also noted there was no evidence of left knee arthritis at the time of discharge and that the only record available was of left knee arthritis many years later which, in his opinion, was due to natural causes.

As the presumption of soundness has not been rebutted with regard to the left knee, the claim is one for service connection. Wagner, 370 F.3d at 1096 ("if the government fails to rebut the presumption of soundness under section 1111, the veteran's claim is one for service connection"). The Veteran has been diagnosed with left knee arthritis, a chronic disease. There was, however, no notation of left knee arthritis in service, and the chronicity and continuity provisions of 38 C.F.R. § 3.303(b) are therefore inapplicable. 38 C.F.R. § 3.303(b) (if a chronic disease is noted in service but chronicity in service is not adequately supported, a showing of continuity of symptomatology after separation is required).

As to whether arthritis manifested within the one year presumptive period or is related to service, the Board finds the July 2006 VA examination to be inadequate. The June 2013 supplemental opinion, however, is adequate and it substantially complied with the Board's remand instructions. The examiner indicated that the current left knee disability was unrelated to service because of a lack of injury during service, a lack of chronicity of care or follow up treatment, and a lack of left knee arthritis at the time of service discharge and for many years thereafter. He also noted that there was no evidence of left knee arthritis until many years after service and that arthritis was, in his opinion, due to natural causes. 

Although the examiner did not specifically reference the August 1996 left knee pain and May 1997 ligament tear, he accurately indicated that arthritis was not diagnosed until years later. As the examiner explained the reasons for his conclusions based on an accurate characterization of the evidence, his opinion is entitled to substantial probative weight. See Nieves-Rodriguez, 22 Vet. App. at 304. No contrary medical opinion is available. Moreover, to the extent that the Veteran is competent to opine on the complex medical question of whether his current left knee disability is related to service, the Board finds the specific, reasoned opinion of the VA examiner to be of greater probative weight than the Veteran's more general lay assertions.

For the foregoing reasons, the preponderance of the evidence is against the claim of entitlement to service connection for a left knee disability. The benefit-of-the-doubt doctrine is therefore not for application, and the claim must be denied. See 38 U.S.C.A. § 5107(b).

Right Shoulder

In his December 2005 claim, the Veteran reported injuring his right shoulder at the same time he injured his right wrist in February 1996. In November 1976, the Veteran reported a history of a dislocated right shoulder. Clinical evaluation of the upper extremities was normal. 

In November 1989, the examiner noted traumatic arthritis with restricted right shoulder motion. Examination following release from active duty in July 1991 did not note any complaints or findings related to the shoulder. 

On examination in December 1995, approximately four days following entry on to active duty, the Veteran's upper extremities were reported as normal. The Veteran was seen in February 1996 with complaints of right wrist pain. Complaints related to the shoulder were not noted. On medical assessment completed in August 1996, the Veteran reported a right wrist injury, but did not mention complaints related to his right shoulder. 

A May 2000 reserve examination noted traumatic arthritis of the right shoulder. 

At a July 2006 VA examination the Veteran reported injuring his right shoulder when he fell on the ice during service, and a history of dislocating that shoulder back in 1975 when he fell through a hole, but he had no problems after that. Following examination the impression was right shoulder pain. The examiner opined that pain was less likely as not caused or a result of any injury in service and that the Veteran's right shoulder appeared to be more rotator cuff irritation or pathology, which was not likely to have been caused by a fall that happened almost 10 years ago.

As a right shoulder disability was not noted on entry in December 1995, the presumption of soundness applies. There is clear and unmistakable evidence of right shoulder arthritis preexisting the period of service beginning in December 1995, specifically, the November 1989 notation of traumatic arthritis. In order to rebut the presumption of aggravation, however, there must also be clear and unmistakable evidence that the disability was not aggravated during this last period of service. While the Veteran is competent to state that he injured his right shoulder when he fell in February 1996, the Board may also take note that the contemporaneous service treatment record reflects a fall in which the Veteran landed mainly on his right hand and wrist, with symptoms and diagnoses relating to the right hand and wrist only. The lack of notation of right shoulder symptoms in connection with the incident recounted by the Veteran, along with notation of symptoms of other parts of the body suggests a lack of right shoulder symptoms at that time. Buczynski v. Shinseki, 24 Vet. App. 221, 226-27 (2011) (citing Fed. R. Evid. 803(7)) (where there is a lack of notation of medical condition or symptoms where such notation would normally be expected, the Board may consider this as evidence that the condition or symptoms did not exist).

Given that it was unclear exactly what right shoulder disabilities the Veteran had, or whether any such disability was incurred or aggravated during active military service, the Board requested an additional medical examination and opinion. The Board instructed that examiner diagnose any right shoulder disability and indicate whether it was obvious or manifest that preexisting right shoulder arthritis was not aggravated during the Veteran's period of active service from December 1995 to September 1996. In addressing this question, the examiner was to discuss whether there was any evidence representing permanent aggravation of the disability beyond its natural progress. The Board also instructed that if a right shoulder disability other than arthritis was diagnosed, the examiner opine whether it is at least as likely as not that such a right shoulder disorder is related to a period of active military service or events therein, to include the February 1996 fall. The Board also instructed that, if the examiner determined that any right shoulder disability other than arthritis was not related to active military service, the examiner was to opine whether it was at least as likely as not that such disability was proximately due to or aggravated by the service-connected right wrist disability.

Following a January 2013 physical examination a VA examiner diagnosed right acromioclavicular joint degenerative arthritis. In a February 2013 addendum he noted that the Veteran had a significant injury prior to enlistment when he fell off a stage. The examiner opined that it was less likely than not that there was a relationship between the Veteran's current right shoulder complaints and service. The examiner also opined that there was no evidence of aggravation during service.

As noted above, given that right shoulder arthritis clearly and unmistakably preexisted service, the next question to be answered is whether right shoulder arthritis clearly and unmistakably was not aggravated during a period of active service. The Board therefore instructed in its June 2013 remand that a supplemental opinion be obtained as to whether the evidence clearly and unmistakably shows that the pre-existing right shoulder arthritis was not aggravated by service or that any increase in disability was due to the natural progression of the disease.

In the June 2013 supplemental opinion, the VA examiner checked the box indicating that the claimed condition, which clearly and unmistakably preexisted service, was clearly and unmistakably not aggravated beyond its natural progression by an in-service injury, disease, or illness. In the rationale section, the examiner indicated that the Veteran had an isolated injury when he fell on the ice in 1996 sustaining injury to his right wrist and elbow, but there was no specific treatment for the shoulder or chronicity of treatment for a right shoulder disorder. Therefore, according to the VA examiner, "there was no record of an aggravated injury while [on] active duty in his medical record files. It is more likely that his arthritis condition in the [acromioclavicular] joint of his right shoulder is due to natural progression of disease."

The June 2013 supplemental opinion substantially complied with its June 2013 remand instructions and, along with the other evidence, is adequate to decide the claim. The June 2013 examiner indicated that the right shoulder disability clearly and unmistakably preexisted service and that it clearly and unmistakably was not aggravated by service. He explained that there was no specific treatment for right shoulder injury at the time the Veteran fell on the ice, while there was treatment for the right wrist and elbow and that the evidence therefore did not reflect aggravation. Rather, the examiner found that it was more likely that right shoulder arthritis was due to the natural progression of the disease. As the examiner explained the reasons for his conclusions based on an accurate characterization of the evidence of record, his opinion is entitled to substantial probative weight. See Nieves-Rodriguez, 22 Vet. App. at 304. There is no contrary medical opinion of record. Moreover, to the extent that the Veteran is competent to opine on the complex medical question of whether his preexisting right shoulder disability was aggravated by service, the Board finds the specific, reasoned opinion of the VA examiner to be of greater probative weight than the Veteran's more general lay assertions.

As there is clear and unmistakable evidence that a right shoulder disability preexisted service and clear and unmistakable evidence that it was not aggravated by service, the claim of entitlement to service connection for a right shoulder disability must be denied. Wagner, 370 F.3d at 1096.

ORDER

Entitlement to service connection for a right ankle disability is denied.

Entitlement to service connection for a left knee disability is denied.

Entitlement to service connection for a right shoulder disability is denied.



____________________________________________
DEREK R. BROWN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs