﻿Citation Nr: AXXXXXXXX
Decision Date: 12/10/18 Archive Date: 12/10/18

DOCKET NO. 181009-558
DATE: December 10, 2018
ORDER
Entitlement to service connection for bilateral hearing loss is granted.
Entitlement to service connection for tinnitus is granted as secondary to service-connected bilateral hearing loss.
REMANDED
Entitlement to service connection for a left knee disorder is remanded.
FINDINGS OF FACT
1. The Veteran’s bilateral sensorineural hearing loss is at least as likely as not related to active service.
2. The Veteran’s tinnitus is attributable to his service-connected bilateral hearing loss.
CONCLUSIONS OF LAW
1. The requirements to establish entitlement to service connection for bilateral hearing loss have been met. 38 U.S.C. §§ 1110, 1131, 1154, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.385.
2. The Veteran’s tinnitus is proximately due to, or the result of, his service-connected bilateral hearing loss. 38 U.S.C. §§ 1101, 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA's decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. 
The Veteran had active service in the United States Navy from September 1966 to June 1970. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form on May 11, 2018. Accordingly, the September 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).
The Veteran was previously represented by attorney Stacey Penn Clark. However, Stacey Penn Clark withdrew as the Veteran’s representative in October 2018. See October 2018 Statement. The Veteran has not yet appointed a new representative.

Service Connection
Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service-the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 38 F.3d 1163, 1167 (Fed. Cir. 2004)). The absence of any one element will result in denial of service connection.
Service connection may also be granted for any disease initially diagnosed after service when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).
In addition, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including sensorineural hearing loss and tinnitus, are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 1137; 38 C.F.R. §§ 3.307, 3.309.
For the showing of a chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time. If chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. 38 C.F.R. §§ 3.303(b), 3.309; Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).
For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.
Service connection may also be granted where a disability is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310. Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 48 (1995) (en banc).
1. Entitlement to service connection for bilateral hearing loss.
The Veteran contends that he has bilateral hearing loss that was incurred during active service as a result of the noise exposure therein. In the September 2018 RAMP decision, the AOJ found that the Veteran has a current diagnosis of bilateral sensorineural hearing loss. The Board is bound by this favorable finding. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07.
Regarding his in-service noise exposure, the Veteran has reported that he was exposed to noise from his duties as a postal clerk that involved unloading mail from aircraft without hearing protection. See January 2015 VA examination. The Veteran has also stated that his general quarters were located directly below a 5 inch gun. See January 2014 VA treatment record. The Veteran’s military personnel records show he was an assistant postal clerk aboard the USS Hornet (CVS-12) from May 1967 to December 1968. In light of the above discussion, the Board finds that the Veteran's assertion of in-service noise exposure is credible and consistent his service. See 38 U.S.C. § 1154(a).
In conjunction with the Veteran’s enlistment into service, an April 1966 examination noted that his ears were normal upon clinical evaluation. An audiological evaluation was also conducted during the enlistment examination. The Board notes that prior to January 1, 1967, audiometric results were reported in standards set forth by the American Standards Association (ASA). Since December 31, 1970, the International Standards Organization - American National Standards Institute (ISO-ANSI) standards generally have been used. Audiometric data originally recorded using ASA standards is converted to the ISO-ANSI standard by adding between 5 and 15 decibels to the recorded data as follows: 
 HERTZ 
 500 1000 2000 3000 4000
Add 15 10 10 10 5
To facilitate data comparison, the Board has converted the ASA standards from the April 1966 testing to the ISO-ANSI standards with the conversions represented by the figures on the right in each column in parentheses. The audiological evaluation showed that the Veteran’s pure tone thresholds, in decibels, were as follows:
 HERTZ 
 500 1000 2000 3000 4000
RIGHT -5 (10) 0 (10) 5 (15) / 5 (10)
LEFT -5 (10) -5 (5) -10 (0) / 15 (20)
In the associated April 1966 Report of Medical History, the Veteran denied having a history of hearing loss. The subsequent service treatment records (STRs) do not contain any complaints, treatment, or diagnoses related to bilateral hearing loss. In the Veteran’s May 1970 separation examination, no audiometric or whispered voice test findings were noted. The results from a spoken voice test were 15 out of 15 bilaterally. The STRs do not reflect that the Veteran completed a Report of Medical History prior to his separation.
After service, the Veteran’s occupational noise exposure consisted of working for General Motors for 23 years, an office job supervising traffic and transportation, a restaurant owner, and driving a semi-truck for 8 years. See January 2015 VA examination. The Veteran also reported that he experienced some recreational noise exposure without the use of hearing protection, including hunting until 1985, the use of lawn equipment, attending a NASCAR race, and playing the clarinet in high school. The Veteran denied having a history of otosurgery, otalgia, otorrhea, true vertigo, head trauma, otitis media, facial numbness, or a family history of hearing loss. He also reported having a history of hypertension.
The Veteran was provided with a VA examination related to his claim in January 2015. The audiological evaluation revealed that the Veteran’s pure tone thresholds, in decibels, were as follows:
 HERTZ 
 500 1000 2000 3000 4000
RIGHT 20 25 5 70 75 
LEFT 20 35 65 70 90 
Speech audiometry based on the Maryland CNC word list revealed speech recognition ability of 96 percent bilaterally.
The results from the January 2015 VA examination establish that the Veteran has a current bilateral hearing loss disability for VA compensation purposes. See 38 C.F.R. § 3.385. Thus, the only remaining question is whether the Veteran’s bilateral hearing loss is related to active service.
After conducting the examination and reviewing the claims file, the January 2015 VA examiner noted that the enlistment examination showed normal hearing in both ears from 500 to 4000 Hertz. However, the separation examination included the results of a whispered hearing test for each ear. The examiner explained that whispered hearing tests were not sensitive to high frequency hearing loss, and they were not considered valid measurements of hearing. Therefore, any high frequency hearing loss that may have occurred at his release from service may not have been detected. Thus, it would be difficult to determine if hearing loss or acoustic trauma occurred without a valid measure of hearing. The examiner stated that it was likely/possible that aging, occupational and recreational noise exposure, and general health had contributed to the Veteran’s hearing loss. It would be speculative to allocate a degree of his current hearing loss to each of these military versus non-military etiologies.
Thus, the examiner appeared to conclude that he was unable to provide an opinion on the etiology of the Veteran’s bilateral hearing loss without resorting to speculation. However, the Board finds that the rationale actually reflects that the examiner could not rule out that the Veteran’s in-service noise exposure was one of the contributing factors in the development of his hearing loss in light of the Veteran’s reported history of noise exposure as well as the separation examination’s deficient audiological evaluation. Although the examiner referenced a whispered voice test rather than the spoken voice test that was conducted at separation, the Board notes that the examiner’s meaning is unchanged. The spoken voice test is a similarly subjective and blunt measure of hearing loss, and provides little probative value. The Board finds that the examiner’s conclusion is probative as it was based on his medical expertise and a review of the relevant evidence of record.
Furthermore, the Veteran reported in a January 2014 VA treatment record that his bilateral hearing loss began during his Naval service on a flight deck. The Veteran also indicated that his hearing loss has progressively worsened in the years since service. The Veteran’s reports in this record additionally suggest that his other noise exposure was not significant. The Veteran is competent to attest to observable symptomatology and events that he experienced. 38 U.S.C. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). The Board also finds him credible as the remaining evidence of record does not contradict his report.
After considering the in-service noise exposure, the Veteran’s competent and credible reports of progressively worsening hearing loss symptoms since they began in service, and the January 2015 VA examiner’s opinion indicating that the Veteran’s current bilateral hearing loss was at least partly attributable to the in-service noise exposure, the Board finds that the most probative evidence establishes a nexus between the Veteran’s current bilateral hearing loss and service. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. As such, entitlement to service connection for a bilateral hearing loss is warranted. See 38 C.F.R. § 3.303(a) (service connection must be considered on the basis of the places, types, and circumstances of his service as shown by his service records, the official history of each organization in which he served, his medical records, and all pertinent medical and lay evidence); see also Buchanan v. Nicholson, 451 F.3d 1331, 1335 (“[N]othing in the regulatory or statutory provisions [relating to evidence to be considered] require both medical and competent lay evidence; rather, they make clear that competent lay evidence can be sufficient in and of itself").
2. Entitlement to service connection for tinnitus, to include as secondary to service-connected bilateral hearing loss.
The Veteran contends that his tinnitus is related to the noise exposure he received during active service. Alternatively, the record has raised the theory that the Veteran’s tinnitus is secondary to his service-connected bilateral hearing loss. 
In this case, the AOJ found that the Veteran has a current diagnosis of tinnitus. See September 2018 RAMP decision. Regarding the theory of secondary service connection, a VA examiner provided an opinion in January 2015. The examiner opined that the Veteran’s tinnitus was at least as likely as not a symptom associated with the Veteran’s hearing loss, as tinnitus was known to be a symptom associated with hearing loss. After considering the September 2013 VA examiner's opinion as a whole and in the context of the record, the Board finds that the examiner's conclusion provides probative value because it addresses the medical issues in this case and was based on the examiner's analysis of the evidence and current medical understanding. See Monzingo v. Shinseki, 26 Vet. App. 97, 106 (2012) (providing that an examination is not rendered inadequate where the rationale provided by an examiner did not explicitly lay out the examiner's journey from facts to a conclusion,"); see also Acevedo v. Shinseki, 25 Vet. App. 286, 294 (2012) (stating that medical reports must be read as a whole in the context of the evidence of record). 
In addition, this opinion is consistent with the Veteran’s report in a January 2014 VA treatment record indicating that his bilateral hearing loss and tinnitus began at the same approximate time. See January 2014 VA treatment record. Although the Board acknowledges that the Veteran was unable to recall when his symptoms of tinnitus began during the January 2015 VA examination, the Veteran had previously indicated in a January 2014 VA treatment record that his bilateral hearing loss and tinnitus began at the same approximate time. Thus, the January 2015 opinion is also consistent with the Veteran’s reported medical history. In addition, the record does not contain any negative opinion regarding secondary service connection.
Based on the foregoing, the most probative evidence demonstrates that the Veteran's tinnitus is due to, or the result of, his bilateral hearing loss. Service connection for tinnitus is therefore granted as secondary to service-connected bilateral hearing loss. 38 C.F.R. § 3.310. In light of this grant of secondary service connection, the Board need not consider any other theory of entitlement.
REASONS FOR REMAND
1. Entitlement to service connection for left knee disorder is remanded.
The issue of entitlement to service connection for a left knee disorder is remanded to correct a duty to assist error that occurred prior to the September 2018 RAMP rating decision on appeal. A medical opinion regarding the claim that was obtained by the AOJ in December 2014 is inadequate. The examination report shows that the AOJ specifically requested an opinion regarding the aggravation of a preexisting condition, informing the examiner that the Veteran was contending that his left knee condition that existed prior to service was aggravated beyond its natural progression by in-service left knee pain in January 1976. The AOJ queried whether the Veteran’s left knee condition, that clearly and unmistakable existed prior to service, was aggravated beyond its natural progression by the specific incidence of left knee pain. The examiner then provided a negative medical opinion based on evidence from the STRs indicating that the Veteran injured his left knee prior to active service.
However, in contrast to the AOJ’s summary of the Veteran’s contentions, the Veteran has asserted that his left knee disorder is directly related to an injury during service. See April 2015 Notice of Disagreement. As no left knee disorder was noted on the Veteran's April 1966 enlistment examination, the presumption of soundness applies. 38 U.S.C. § 1111; 38 C.F.R. § 3.304(b). In order to rebut the presumption of soundness, it must be shown with clear and unmistakable evidence that a disorder preexisted service and that the disorder was not aggravated by service. Id. The Board finds that the examiner’s opinion is inadequate as the rationale only discussed the evidence from the STRs without any reference to the Veteran’s current left knee disorder. In the absence of such a discussion, it is unclear whether there is clear and unmistakable evidence that the Veteran’s current left knee disorder existed prior to service. As such, the medical opinion on remand must identify all current left knee disorders and clarify whether each disorder was present before service based on this standard, and if so, whether there is sufficient evidence to rebut the presumption of soundness.
The matter is REMANDED for the following action:
1. The AOJ should request that the Veteran provide the names and addresses of any and all health care providers who have provided treatment for his left knee disorder.
After acquiring this information and obtaining any necessary authorization, the AOJ should obtain and associate these records with the claims file.
The AOJ should also secure any outstanding, relevant VA medical records, to include records from the North Florida/South Georgia dated since December 2014.
2. After completing the preceding development in paragraph 1, obtain a VA medical opinion from a qualified examiner on the etiology of the Veteran's left knee disorder. The claims file must be made available to the examiner. The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions. A clear explanation for all opinions based on specific facts for the case as well as relevant medical principles is needed. If an examination is deemed necessary, one must be provided.
The Veteran is competent to attest to matters of which he has first-hand knowledge, including observable symptoms. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.
First, the examiner must identify all left knee disorders that have been present during the appeal period. 
For each identified disorder, the examiner must provide an opinion as the following questions:
(a) Is there clear and unmistakable (undebatable) evidence that the identified left knee disorder existed prior to the Veteran's active duty service?
(b) If the answer to question (a) above is yes, is there clear and unmistakable (undebatable) evidence that the pre-existing left knee disorder did NOT undergo an increase in severity beyond the natural scope of the disability during the Veteran's active duty service?
(Continued on the next page)
 
(c) If the answer to question (a) above is no, is at least as likely as not (a 50 percent or greater probability) that the left knee disorder manifested during active duty service or is otherwise related to an event, injury, or disease incurred during active duty service?
 
GAYLE STROMMEN
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD K.C. Spragins, Associate Counsel