Citation Nr: 1749179 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 13-30 296 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Togus, Maine


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for tinnitus.

3. Entitlement to service connection for hypertension, to include as secondary to posttraumatic stress disorder (PTSD).


REPRESENTATION

Veteran represented by: Michael J. Kelley, Attorney


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

Polly Johnson, Associate Counsel


INTRODUCTION

The Veteran had active service from November 1990 to May 1991 with active duty for training service from November 1988 to March 1989 and additional service in the Rhode Island Army National Guard from January 1988 to January 1993.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Providence, Rhode Island. The claims have since been transferred to the Togus, Maine RO.

In August 2015, the Veteran testified before the undersigned at a videoconference hearing. A transcript of the hearing is associated with the claims file. During the hearing, the Veteran raised the issue of service connection for a right knee disorder. A June 2016 Board decision referred the issue to the Agency of Original Jurisdiction (AOJ) for appropriate action. To date, no action has been taken. The Board recognizes that the Veteran attempts to raise the issue and he is advised that a claim for benefits must be submitted on the application form prescribed by the Secretary. 38 C.F.R. §§ 3.1(p), 3.155, 3.160 (2017). 

In June 2015 and January 2016, the Board remanded the case for additional development and it now returns for further appellate review.


FINDINGS OF FACT

1. At no time prior to, or during, the pendency of the claim has the Veteran had a bilateral hearing loss disability for VA purposes.

2. The Veteran has competently and credibly reported that his tinnitus had its onset during service and has been recurrent since.

3. The Veteran's hypertension has been aggravated by his service-connected PTSD.


CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing loss are not met. 38 U.S.C.A. § 1110, 1131, 5107, 7104 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).

2. The criteria for service connection for tinnitus are met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303(a) (2016).

3. The criteria for service connection for hypertension, secondary to PTSD, are met. 38 U.S.C.A. § 1110, 1131, 5107, 7104 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).


Service Connection - Generally

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303 (a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). 

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. 38 U.S.C.A. § 1112; 38 C.F.R. § 3.304. See also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)]. 

Where a veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests certain chronic diseases, including organic diseases of the nervous system, to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309. In an October 4, 1995, opinion, VA's Under Secretary for Health determined that it was appropriate to consider high frequency sensorineural hearing loss an organic disease of the nervous system and therefore a presumptive disability. 

Alternatively, service connection may be established under 38 C.F.R. § 3.303 (b) by (a) evidence of (i) the existence of a chronic disease in service or during an applicable presumption period under 38 C.F.R. § 3.307 and (ii) present manifestations of the same chronic disease, or (b) when a chronic disease is not present during service, evidence of continuity of symptomatology. However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309 (a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Service connection on the basis of continuity of symptomatology is available for hypertension. 38 C.F.R. §§ 3.303 (b), 3.309(a).

Finally, service connection may also be established on a secondary basis for a disability that is shown to be proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310 (a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) a service-connected disability; (2) an additional disability; and (3) that the additional disability was either (a) caused by or (b) aggravated by the service-connected disability. Id.; Allen v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102.

Bilateral Hearing Loss

The Veteran contends that he has bilateral hearing loss due to noise exposure during his military service. Specifically, he asserts that he was exposed to excessive noise in his military occupational specialty as a wheeled vehicle mechanic.

The threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. 

The Court has held that service connection can be granted for a hearing loss where the Veteran can establish a nexus between his current hearing loss and a disability or injury he suffered while he was in military service. Godfrey v. Derwinski, 2 Vet. App. 352, 356 (1992). The Court has also held that VA regulations do not preclude service connection for a hearing loss which first met VA's definition of disability after service. Hensley, supra, at 159. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107 ; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

On September 2011 VA examination and audiological testing, the air conduction pure tone thresholds, in decibels, were as follows:

Puretone Threshold

500 Hz
1000 Hz
2000 Hz
3000 Hz
4000 Hz
Right Ear
15
15
10
15
20
Left Ear
10
10
10
20
10

Speech audiometry revealed speech recognition ability of 96 percent in the right ear and 94 percent in the left ear. The examiner stated that the Veteran's hearing was within normal limits.

On October 2016 VA examination and audiological testing, the air conduction pure tone thresholds, in decibels, were as follows:

Puretone Threshold

500 Hz
1000 Hz
2000 Hz
3000 Hz
4000 Hz
Right Ear
10
15
10
20
15
Left Ear
15
20
10
5
10

Speech audiometry revealed speech recognition ability of 100 percent in both ears. The examiner stated that the Veteran had hearing within normal limits.

The Board acknowledges the Veteran's noise exposure in service; indeed, the Board is granting entitlement to service connection for tinnitus in this decision. Nevertheless, in comparing the results of the September 2011 and October 2016 VA examinations to the regulatory criteria set forth in 38 C.F.R. § 3.385, the Board must conclude that the preponderance of the evidence is against a finding that the Veteran currently suffers from a bilateral hearing loss disability as defined for VA compensation purposes. Importantly, no other competent medical evidence in the record indicates a bilateral hearing loss disability in accordance with 38 C.F.R. § 3.385.

The Board acknowledges that the Court has held that the requirement of a current disability is satisfied when the claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim and that a claimant may be granted service connection even though the disability resolves prior to adjudication of the claim. McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). Additionally, in Romanowsky v. Shinseki, 26 Vet. App. 289 (2013), the Court held that when the record contains a recent diagnosis of disability prior to a veteran filing a claim for benefits based on that disability, the report of a diagnosis is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency.

Nevertheless, in the instant case, there is no competent evidence showing a bilateral hearing loss disability from the Veteran's initial date of claim in May 2011, or a recent diagnosis prior to the filing of such claim, through the course of the appeal. As such, the evidence does not show that the criteria under 38 C.F.R. § 3.385 have been met at any point since the date of claim for service connection.

In this regard, the Veteran does not have an auditory threshold of 40 decibels or greater in any of the frequencies, or 26 decibels or greater for at least three of the frequencies. Further, his speech recognition scores using the Maryland CNC Test are 94 or greater. In the absence of proof of a present disability, there can be no valid claim for service connection as Congress has specifically limited entitlement to service connection to cases where such incidents have resulted in a disability. Brammer v. Derwinski, 3 Vet. App. 223 (1992).

The Board has also considered the Veteran's contentions that he suffers from hearing loss due to noise exposure in service. Lay assertions may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1153 (a); 38 C.F.R. § 3.303 (a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). 

Here, the Veteran is competent to say that he experienced hearing loss symptoms during and since service. However, he, as a lay person, is not competent to diagnose hearing loss as he does not possess the requisite specialized knowledge. In this regard, such a diagnosis requires the administration and interpretation of audiological test results. Therefore, as such is a complex medical question, the Veteran is not competent to offer a diagnosis of hearing loss. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). Consequently, as the competent evidence is against the finding that the Veteran's bilateral hearing loss meets VA's definition of hearing loss, the Board finds that he does not have a current diagnosis of bilateral hearing loss for VA purposes prior to, or during, the pendency of the claim. 

In conclusion, while the Board recognizes the Veteran's noise exposure in service, a preponderance of the evidence is against a finding of a current disability of right ear hearing loss and thus against the Veteran's claim for service connection for bilateral hearing loss. As the preponderance of the evidence weighs against the claim, the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C.A. § 5107 (b).


Tinnitus

Considering the pertinent evidence in light of the governing legal authority, and affording the Veteran the benefit of the doubt, the Board finds that service connection for tinnitus is warranted.

The Veteran claims that he has tinnitus as a result of in-service noise exposure. 

As for the matter of current disability, the Board notes that the Veteran, as a layperson, is competent to report on matters observed or within his personal knowledge. See 38 C.F.R. § 3.159 (a)(2); Barr v. Nicholson, 21 Vet. App. 303 (2007); see also Layno v. Brown, 6 Vet. App. 465, 470 (1994); Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). Tinnitus is a medical term referring to symptoms of noise in the ears, such as ringing, buzzing, roaring or clicking. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1714 (28th ed. 1994). 

In adopting the current rating criteria for tinnitus under 38 C.F.R. § 4.87, Diagnostic Code 6260, VA described tinnitus as follows:

Tinnitus is classified either as subjective tinnitus (over 95% of cases) or objective tinnitus. In subjective or "true" tinnitus," the sound is audible only to the patient. In the much rarer objective tinnitus (sometimes called extrinsic tinnitus or "pseudo-tinnitus"), the sound is audible to other people, either simply by listening or with a stethoscope. 67 Fed. Reg. 59033 -01 (Sept. 19, 2002).

Thus, tinnitus is a rare type of disability that, in the vast majority of cases, may be established on the basis of lay evidence alone. See Charles v. Principi, 16 Vet. App. 370 (2002). Given the nature of the disability at issue, the Veteran's lay statements are sufficient to establish tinnitus as a current disability. Nonetheless, a diagnosis of tinnitus was confirmed at an October 2016 VA examination.

As to the question of whether there exists a nexus between current tinnitus and service, at his August 2015 Board hearing, the Veteran reported that he believed that his tinnitus began in 1990, 1993, or 1994 while serving in Operation Desert Storm. He explained that he did not notice the ringing or humming in his ears at the time he was exposed to noise, but rather, he noticed it after he came home. He indicated that he did not realize the ringing was coming from his ears and not just in his head. He also reported that he did not understand what tinnitus meant and that the ringing and humming in his ears were symptoms of tinnitus. He said that he remembered asking his mother at a family reunion, within a few weeks of being discharged, if she heard ringing because he did not realize that it was coming from his ears. See August 2015 Hearing Transcript at p. 7.

On review of the entire evidentiary record, the Board finds no reason to question the veracity of the Veteran's assertions of an in-service onset of tinnitus. Moreover, the Board highlights that the credibility of lay statements may not be refuted solely by the absence of corroborating medical evidence. See Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (lay evidence concerning continuity of symptoms after service, if credible, may be competent, regardless of the lack of contemporaneous medical evidence). In this regard, the Board notes that the Veteran has provided lay statements as to the onset of his tinnitus. As discussed above, tinnitus is a rare type of disability that, in the vast majority of cases, may be established on the basis of lay evidence alone when there is credible evidence of continuity of symptomatology since service. See Charles, supra. Thus, the Veteran is competent to state that his tinnitus began during service, and that he has continued to experience recurrent tinnitus from service to the present. 

In sum, the Veteran has provided competent and credible evidence that he experienced tinnitus in service and that it has been recurrent to the present. The Veteran's statements, when viewed in relation to his significant noise exposure in service, as well as VA's recognition that true tinnitus is a purely subjective symptom, are entitled to significant probative weight, and thus, are sufficient to establish that the Veteran's tinnitus had its onset during service.




Hypertension

The Veteran has alleged one theory of entitlement for service connection for hypertension; specifically, that it is secondary to his service-connected PTSD. As the Board is granting service connection on this basis, it will not discuss other theories of entitlement. 38 U.S.C.A. § 7104.

As noted above, establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439, 448 (1990).

The Veteran's service treatment records are silent for complaints of or treatment for hypertension. In October 2013, the Veteran was granted service connection for PTSD, effective May 2, 2011.

The claims file contains extensive VA treatment records and private treatment records, indicating longstanding treatment for PTSD and hypertension. Indeed, the Veteran underwent inpatient treatment for PTSD from February - March 2014 and from December 1, 2014 - December 23, 2014. 

Notably, a December 2014 treatment note dated towards the end of the Veteran's PTSD inpatient admission, noted that the Veteran's blood pressure had "improved greatly since admission." From December 2014 through the end of 2015, the Veteran attended a program through his outpatient program called "PTSD Stress and Your Health," which aimed to educate veterans on the negative effects of stress on the body, to include, notably, the presence of hypertension. 

At his August 2015 Board hearing, the Veteran testified that his PTSD caused his depression, which in turn caused his weight gain and subsequent elevated blood pressure readings. See, August 2015 Hearing Transcript at p. 20. Additionally, he testified that he was a "nervous wreck 24 hours a day," which also caused elevated blood pressure. Id.

An October 2015 mental health treatment note showed that the Veteran engaged in a conversation with his provider about risk factors for hypertension and the effects of high blood pressure on the body. The Veteran was counseled on lifestyle modifications for reducing stress-related heart disease.

The Veteran underwent a VA examination in May 2016 wherein the examiner determined that the Veteran's hypertension was not proximately due to, the result of, or aggravated by his PTSD, noting that the diagnosis of hypertension predated the Veteran's PTSD. Specifically, the examiner stated "[Hypertension] cannot be caused by a condition that it predates. The nature, onset and continuity of symptoms is not relevant because HTN condition clearly predates onset of service connected PTSD. Veteran's contentions that his PTSD made him depressed and he comforted himself by eating more, which led to him gaining weight and caused an increase in his blood pressure and his hypertension is not relevant because HTN condition clearly pre-dated the onset and diagnosis of PTSD." With respect to aggravation, the examiner stated that the Veteran's hypertension had remained stable with similar treatment over many years, and that hypertension was not documented to have become worse because of the service-connected PTSD.

Upon careful review of the evidence of record, the Board finds that the positive and negative evidence regarding the Veteran's claim for service connection for hypertension secondary to PTSD is at least in relative equipoise. Despite the negative VA examination report, the Veteran's VA treatment records show longstanding treatment for PTSD and hypertension, and notably state that the Veteran's blood pressure readings went down as his PTSD treatment came to an end. See, December 2014 VA treatment note. The Board finds it significant that his VA PTSD outpatient and inpatient treatment notes reflect simultaneous treatment for hypertension, and that the Veteran was encouraged to take a class involving PTSD and stress and was educated on the effects of stress on blood pressure. The Board has weighed the Veteran's statements at his Board hearing that many of his doctors told him that his PTSD caused his hypertension, with the VA treatment records. See, Acevedo v. Shinseki, 25 Vet. App. 286, 294 (2012) (medical reports must be read as a whole, and the Board is permitted to draw inferences based on the overall reports so long as the inference does not result in a medical determination.)

In sum, based on the evidence of record and resolving reasonable doubt in the Veteran's favor, entitlement to service connection for hypertension, secondary to PTSD, is warranted. 38 C.F.R. §§ 3.102, 3.310.


ORDER

Service connection for bilateral hearing loss is denied.

Service connection for tinnitus is granted.

Service connection for hypertension, secondary to PTSD, is granted.



____________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs