Citation Nr: 1829935 
Decision Date: 11/29/18 Archive Date: 12/06/18

DOCKET NO. 12-20 999 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to service connection for an acquired psychiatric disability to include generalized anxiety disorder, NOS, and depressive disorder, NOS (claimed as mental condition).

2. Entitlement to service connection for the purpose of establishing eligibility for treatment of a psychosis under 38 U.S.C. § 1702.

3. Entitlement to an increased rating in excess of 20 percent for lumbar paravertebral myositis, posttraumatic.

4. Entitlement to an increased rating in excess of 10 percent for fracture of both bones, left forearm, status post-surgery residuals with arthritis.

5. Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU). 


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States 


ATTORNEY FOR THE BOARD

C.S. De Leo, Associate Counsel


INTRODUCTION

The Veteran served on active duty from February 1980 to August 1990.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from August 2011 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, Puerto Rico.

In an August 1, 2011 rating decision, the RO increased the noncompensable evaluation for lumbar paravertebral myositis, posttraumatic to 20 percent effective April 4, 2011. In a subsequent August 2011 rating decision, the RO denied service connection for the purpose of establishing eligibility to treatment. 

The Board finds that the United States Court of Appeals for Veterans Claims' (Court's) holding in Clemons v. Shinseki, 23 Vet. App. 1 (2009) is applicable in this case, as a review of the record reflects that the Veteran has various diagnosed psychiatric disorders, including anxiety disorder, NOS and depressive disorder, NOS. As such, the Board has characterized the issue of service connection for a psychiatric disorder as listed on the title page.

The issues of entitlement to an increased rating for lumbar paravertebral myositis, fracture of both bones, left forearm, status post-surgery residuals with arthritis, and a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action, on his part, is required.


FINDINGS OF FACT

1. The Veteran's psychiatric disability did not have onset during and was not caused by active service and was not caused or made worse by service-connected disability.

2. The Veteran did not have an active psychosis that developed during or within two years of separation from active duty service.


CONCLUSIONS OF LAW

1. The criteria for service connection for an acquired psychiatric disability have not all been met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2017). 

2. The criteria for service connection for the purpose of establishing eligibility for treatment of a psychosis under 38 U.S.C. § 1702 have not all been met. 38 U.S.C. 
§§ 1702, 5107 (2012); 38 C.F.R. §§ 3.12, 3.384 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See eg. 38 U.S.C. §§ 5103, 5103A (2012) and 38 C.F.R. § 3.159 (2017). In the instant case, VA provided adequate notice in a letter sent to the Veteran in April 2011.

VA has a duty to assist a claimant in the development of a claim. This duty includes assisting the claimant in the procurement of relevant treatment records and providing an examination when necessary. 38 U.S.C. § 5103A; 38 C.F.R. 
§ 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service, VA, and private treatment records are associated with the claims. VA provided relevant examination as discussed in further on in the decision. 

There is no indication of additional existing evidence that is necessary for a fair adjudication of these claims that are the subject of this appeal. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist. 

II. Service Connection 

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. § 1110, 1131 (2012); 38 C.F.R. § 3.303(a) (2017). "To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"- the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Additionally, service connection may be established on a secondary basis for a disability which is proximately due to, or aggravated by, service-connected disease or injury. Disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). 

A. Acquired Psychiatric Disability

The Veteran seeks entitlement to service connection for an acquired psychiatric disability, secondary to service-connected lumbar paravertebral myositis and fracture of both bones, left forearm with arthritis disabilities. Specifically, during the June 2011 VA examination, the Veteran explained that the onset of psychiatric symptoms was during military service when he injured his wrist. 

The Veteran has been diagnosed with anxiety disorder, NOS, and depressive disorder, NOS satisfying the first element of a service connection claim. Thus, the dispositive issue in this case is whether psychiatric disorder is related to his lumbar paravertebral myositis, and fracture of both bones of the left forearm with arthritis disabilities. In this case, as discussed below, the preponderance of evidence is against a finding that the Veteran's psychiatric disability is so related. 

Pertinent evidence of record includes service treatment records and post-service VA treatment records and examination reports. With respect to conditions of any psychiatric disorder, the Veteran's service treatment records are devoid of any treatment or diagnosis related to mental health problems. A June 1990 report of medical history for the purposes of conducting a medical review board indicates the Veteran checked "Yes" for having had or currently having depression or excessive worry, and, frequent trouble sleeping. The June 1990 report of medical examination notes the examiner gave a normal clinical evaluation with regard to any relevant system or anatomy. 

The Veteran was afforded a VA mental disorder examination to determine the etiology of any diagnosed mental disorder. The resulting June 2011 examination report indicates the examiner reviewed the Veteran's claims file in conjunction with the examination, at which time the examiner diagnosed anxiety disorder, NOS. The examination report documents the examiner noted the Veteran reported he was unsure of his diagnosis but he takes medication daily. According to the Veteran's reports, psychiatric symptoms arose during military service when he broke his wrist. He explained thereafter he started drinking, which resulted in marital problems and ultimately losing his job at the Post Office. He endorsed symptoms of anxiety, irritability, isolation, and difficulty sleeping. The examiner noted the Veteran's reported symptoms exacerbated by work-related stress stemming from challenges with his coworkers and supervisors, in which he described as the result of a "lack of rules" and a "crazy environment," and marital problems, to include divorce. The examiner opined that current anxiety disorder is less likely as not (less than 50/50 probability) caused by or a result of his service connected lumbar paravertebral myositis and fracture of both bones of the left forearm with arthritis disabilities, and that he Veteran's intervening occupational problems, divorce, and economical problems were likely to have caused his current anxiety disorder. Noting that medical literature provides no evidence of a direct physiological consequence between the Veteran's lumbar paravertebral myositis and fracture of left arm, the examiner explained that the evidence of record shows the Veteran first sought treatment following service discharge in 2010, and at that time, the Veteran reported stressors related to his work, marriage, and finances. The examiner concluded this is also consistent with the medical evidence of record which documents no psychiatric complaints, findings, or treatment prior to or during military service, as well as no medical evidence of a mental health condition until nearly 2010, 20 years post-service discharge. 

VA treatment records show the Veteran sought treatment for psychiatric disability diagnosed as anxiety disorder, NOS, depressive disorder, NOS, and major depression. Specifically, an August 2010 psychiatric admission evaluation note indicates a diagnostic impression of depressive disorder, NOS. An April 2011 VA mental health note indicates a diagnosis of depressive disorder, NOS. A January 2011 VA mental health note indicates the Veteran was diagnosed with anxiety, NOS, and a June 2011 VA treatment record also indicates diagnosis of anxiety disorder, NOS. There is no medical opinion relating the Veteran's psychiatric diagnoses to service-connected disabilities of lumbar paravertebral myositis or fracture of both bones of the left forearm with arthritis.

Private treatment records include hospital records and multiple statements from private practitioners. A hospital certification from Pan-American Hospital shows the Veteran was hospitalized on two occasions, to include June 9, 2008 until June 13, 2008, and November 29, 2010 to December 8, 2010, for major depression.

Correspondence from Dr. J. A. A. dated in October 2011, and a second correspondence received in March 2012, indicates the Veteran has been under the care of the practitioner since 2007, due to a history of anxiety and depression. Dr. J.A.A. described the Veteran's episodes of depression and anxiety as "specially triggered" by his work environment and coworker's behavior explained as making noise and mocking the Veteran. The practitioner explained the Veteran's treatment includes psychotherapy and medication.

A February 2012 psychiatric medical report from Dr. O.C.R. indicates the onset of symptoms was 10 years ago and the Veteran first sought care with his office in 2010. Dr. O.C.R. attributed the Veteran's mental health diagnosis to his work environment, financial difficulty, and loss of employment due to chronic absence and medical advice.

In light of the forgoing, the Board finds that entitlement to service connection for an acquired psychiatric disability to include anxiety disorder and depressive disorder is not warranted. The preponderance of evidence is against a finding that the nexus element has been met, to include consideration of secondary service connection related to service-connected lumbar paravertebral myositis and fracture of both bones of the left forearm with arthritis. Service treatment records are devoid of evidence of a diagnosis or symptoms indicated to be related to psychiatric disorder during service, and the record does not show a competent diagnosis of psychiatric disorder until August 2010, as identified by VA treatment record, approximately 20 years following separation from military service. 

First, the Board finds the medical opinion of the June 2011 practitioner highly probative evidence against the claim because it includes a logical rationale supporting his conclusion. To the extent that the Veteran believes his psychiatric disability is related to his lumbar paravertebral myositis and fracture of both bones of the left forearm with arthritis disabilities, the Board finds any lay opinion to this effect to not be competent evidence. 

Although it is error to categorically reject a non-expert nexus opinion, not all questions of nexus are subject to non-expert opinion. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). Whether a layperson is competent to provide a nexus opinion depends on the facts of the particular case. In Davidson, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) drew from its earlier decision in Jandreau v. Nicholson to explain its holding. Id. 

In that earlier decision, the Federal Circuit addressed the competency of lay diagnoses, stating as follows: "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

The Federal Circuit provided an example, stating that a layperson would be competent to identify a simple condition such as a broken leg, but not competent to provide evidence as to a more complex medical question such as a form of cancer. Id. at n.4. 

Also of note is that the Veterans Court has explained that non-expert witnesses are competent to report that which they have observed with their own senses. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

Taking Davidson, Jandreau, and Layno together, leads the Board to the conclusion that the complexity of the question and whether this opinion could be rendered based on personal observation are factors in determining whether a non-expert nexus opinion or diagnosis is competent evidence. A review of the record evidence shows there is no indication that the Veteran has medical expertise. Whether current psychiatric disorder is related to lumbar paravertebral myositis and fracture of both bones of the left forearm with arthritis, is not a simple question subject to non-expert opinion evidence. Whether one medical condition causes or worsens another is not a simple question amenable to lay opinion evidence. Thus, to the extent that the Veteran contends that his psychiatric disorder is caused by or worsened by another medical condition, his opinion is not competent evidence. 

Additionally, when addressing a claim on the merits, the Board has an obligation to evaluate the credibility of evidence and to assign probative weight to competent evidence. See Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (recognizing the Board's "authority to discount the weight and probity of evidence in light of its own inherent characteristics and its relationship to other items of evidence"). 
Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994) (explaining that competency has to do with whether the evidence may be considered by the trier of fact); see also Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

As explained above, as to the psychiatric disability, the only theory that is reasonably raised by the Veteran's contentions or the evidence of record is that the condition is secondary to the service-connected lumbar paravertebral myositis and fracture of both bones of the left forearm with arthritis disabilities. Thus, reading the June 2011 opinion of the VA examiner as a whole and in the context of the evidence of record, the underlying rationale that the Veteran's current psychiatric disability, diagnosed many years after service discharge, is less likely than not related to service-connected lumbar paravertebral myositis and fracture of both bones of the left forearm with arthritis disabilities is probative. Acevedo v. Shinseki, 25 Vet. App. 286, 294 (2012) (medical reports must be read as a whole and in the context of the evidence of record). Significantly, there is no probative contrary medical opinion in the evidence of record.

In this regard, concerning entitlement to direct service connection, as discussed above, the first post-service evidence of diagnosis of psychiatric disorder was in August 2010. Further, the Veteran's June 1990 report of medical history indicates the Veteran checked "Yes" for depression or excessive worry and frequent trouble sleeping, and on evaluation, the June 1990 report of medical examination notes the examiner gave a normal clinical evaluation with regard to any relevant system or anatomy. Otherwise, the service treatment records are devoid of reference to complaint of, symptoms, treatment, or diagnoses of problems related to a psychiatric disorder. 

For these reasons, the Board finds that the issue of entitlement to service connection for an acquired psychiatric disability is not reasonably raised by the evidence of record and need not be further addressed. Robinson v. Shinseki, 557 F.3d 1355, 1361 (Fed. Cir. 2009) ("Where a fully developed record is presented to the Board with no evidentiary support for a particular theory of recovery, there is no reason for the Board to address or consider such a theory").

For the above reasons, the Board concludes that the preponderance of the evidence is against granting service connection for an acquired psychiatric disability to include generalized anxiety disorder, NOS, and depressive disorder, NOS on any theory of entitlement raised by the Veteran or the record. Thus, there is no reasonable doubt to be resolved in the Veteran's favor, and the claim must be denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

B. Service Connection - Psychosis for the Purpose of Establishing Eligibility to Treatment

Under 38 U.S.C. § 1702 (a), any Veteran of World War II, the Korean conflict, the Vietnam era, or the Persian Gulf War who developed an active psychosis (1) within two years after discharge or release from the active military, naval, or air service, and (2) before July 26, 1949, in the case of a Veteran of World War II, before February 1, 1957, in the case of a Veteran of the Korean conflict, before May 8, 1977, in the case of a Vietnam era Veteran, or before the end of the two-year period beginning on the last day of the Persian Gulf War, in the case of a Veteran of the Persian Gulf War, shall be deemed to have incurred such disability in the active military, naval, or air service. 38 U.S.C. § 1702 (2012). 

The Board finds that the current medical records do not include a diagnosis or other medical evidence of psychosis. VA has defined the term psychosis for purposes of presumptive service connection at 38 C.F.R. § 3.384. Under 38 C.F.R. § 3.384, the term psychosis is defined as to include brief psychotic disorder, delusional disorder, psychotic disorder due to general medical condition, psychotic disorder not otherwise specified, schizoaffective disorder, schizophrenia, schizophreniform disorder, shared psychotic disorder, and substance-induced psychotic disorder.

In this case, the competent medical evidence does not show that the Veteran has (or has had) a psychosis, as defined by 38 C.F.R. § 3.384 (2017) at any point during the appellate term. Moreover, the record does not establish that the Veteran had any psychiatric disorder manifested within two years of discharge from his period of active service that ended in August 1990. Notably, the first diagnosis of a psychiatric disorder is in August 2010, when he was diagnosed with depressive disorder. He was subsequently diagnosed with anxiety disorder. Accordingly, the preponderance of the evidence is against the claim for eligibility for treatment for psychosis under 38 U.S.C. § 1702.

For the above reasons, there is no evidence that the Veteran developed psychosis within two years of separating from active service. Accordingly, the preponderance of the evidence is against eligibility for treatment for psychosis under 38 U.S.C. 
§ 1702.


ORDER

Service connection for an acquired psychiatric disability to include generalized anxiety disorder, NOS, and depressive disorder, NOS, is denied.

Service connection for psychosis for the purpose of establishing eligibility for treatment pursuant to the provisions of 38 U.S.C. § 1702, is denied.
REMAND

In August 2012 VA Form 9, Appeal to Board of Veterans' Appeals, the Veteran explained that his lumbar paravertebral myositis and fracture of both bones of the left forearm with arthritis had increased in severity. The Veteran explained due to worsening symptoms his conditions require more treatment. A review of the record shows the Veteran's last VA examination was in July 2011. 

In light of the Veteran's statements identifying increasing symptoms related to his lumbar paravertebral myositis and fracture of both bones of the left forearm with arthritis disabilities, another examination is required to evaluate his current disabilities. Thus, to ensure that the record reflects the current extent of the disabilities, an examination, with findings responsive to the pertinent rating criteria, is needed. Therefore, the Veteran should be scheduled for updated VA examination of his lumbar and left forearm with arthritis disabilities on remand. Snuffer v. Gober, 10 Vet. App. 400, 408 (1997) (requiring a new examination where the evidence reflects that a disability has increased in severity since the time of the last VA examination).

Finally, the record notes that during the appellate term the Veteran was employed with the U.S. Postal Service for over 15 years until he lost his job. According to correspondence from Dr. J.A.A. received in March 2012, the Veteran's lower back pain limits his ability to perform his duties as a postman due to diminished ability to reach and ability to lift, and such physical and physiological limitations preclude his ability to continue this work.

This raises the issue of entitlement to TDIU. This issue has not been addressed by the AOJ nor is there a VA Form 21-8940, Veteran's Application for Increased Compensation Based on Unemployabilty of record. Such form provides information relevant to entitlement to TDIU. On remand, the AOJ must request that the Veteran complete this form and then adjudicate the issue of entitlement to TDIU. 


Accordingly, the case is REMANDED for the following action:

1. Request that the Veteran complete a formal TDIU application form (VA Form 21-8940). 

2. Then, ensure the Veteran is scheduled for a VA examination in connection with his claim for increased rating for lumbar paravertebral myositis disability, by an appropriate medical professional. The contents of the entire claims file, to include a complete copy of this Remand, must be made available to the examiner, and the examination report should reflect consideration of the Veteran's documented medical history and assertions. All appropriate tests and studies should be accomplished (with all results made available to the requesting clinician prior to the completion of his or her report) and all clinical findings needed to evaluate the lumbar spine disability should be reported in detail. 

3. The examination should be conducted in accordance with the current Disability Benefits Questionnaire applicable to the spine condition for which the Veteran is seeking an increased rating. All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided. 

The examination must comply with 38 C.F.R. § 4.59 as interpreted in Correia. The examiner must report the ranges of motion for the lumbar spine. Specifically, the examiner must test the range of motion in active motion, passive motion, weight-bearing, and nonweight-bearing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided. 

The examiner should also state whether the Veteran's lumbar paravertebral myositis disability is manifested by weakened movement, excess fatigability, incoordination, or pain. These determinations should be expressed in terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, incoordination, or pain. If pain is present during the range of motion, the examiner should identify at what point during the range of motion the Veteran experienced any limitation of motion that was specifically attributable to pain. 

The examiner must address whether the Veteran has neurological abnormalities associated with his spine disability, to include radiculopathy, and, if so, the severity of such abnormalities. 

4. Ensure the Veteran is scheduled for a VA examination in connection with his claim for increased rating for fracture of both bones of the left forearm with arthritis disability by an appropriate medical professional. The contents of the entire claims file, to include a complete copy of this Remand, must be made available to the examiner, and the examination report should reflect consideration of the Veteran's documented medical history and assertions. All appropriate tests and studies should be accomplished (with all results made available to the requesting clinician prior to the completion of his or her report) and all clinical findings needed to evaluate the lumbar spine disability should be reported in detail. 

5. The examination should be conducted in accordance with the current Disability Benefits Questionnaire applicable to the bone condition for which the Veteran is seeking an increased rating. All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided. 

6. After the above development has been completed, and any additional development deemed necessary is completed, adjudicate the issues on appeal and the issue of entitlement to a TDIU to determine whether TDIU is warranted for any period on appeal. If any benefit sought on appeal remains denied, furnish the Veteran and his representative, if any, a supplemental statement of the case and return the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



______________________________________________
JAMES G. REINHART
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs