﻿Citation Nr: AXXXXXXXX
Decision Date: 02/25/19 Archive Date: 02/25/19

DOCKET NO. 181106-829
DATE: February 25, 2019

ORDER

Entitlement to service connection for obstructive sleep apnea is granted. 

REMANDED

Entitlement to an initial evaluation in excess of 30 percent for an anxiety disorder (claimed as posttraumatic stress disorder) from November 19, 2015, to October 10, 2018, is remanded.

FINDING OF FACT

The Veteran’s obstructive sleep apnea manifested during his active military service.

CONCLUSION OF LAW

Resolving all reasonable doubt in favor of the Veteran, obstructive sleep apnea was incurred in active military service. 38 U.S.C. 1110, 1111, 5107 (2012); 38 C.F.R. 3.102, 3.303, 3.304 (2017).

REASONS AND BASES FOR FINDING AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program

The Veteran served on active duty from February 1972 to February 1974; from January 2002 to January 2003; from August 2003 to February 2005; from April 2006 to May 2007; and from December 2010 to April 2011. He also had additional service in the United States Army Reserve and the Florida Army National Guard. His awards and decorations include the Combat Infantryman Badge (see DD Form 214 for periods of service from January 2002 to January 2003 and from December 2010 to April 2011); the Bronze Star (see DD Form 214 for periods of active duty from August 2003 to February 2005 and from December 2010 to April 2011); and the Soldiers Medal for Heroism (see DD Form 214 for period of active duty from August 2003 to February 2005).

The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. In July 2018, the Agency of Original Jurisdiction (AOJ) identified a pre-decisional duty to assist error and transferred the appeal to the Supplemental Claim lane for additional development. Accordingly, the March 2018 RAMP rating decision considered the evidence of record prior to issuance of the RAMP rating decision. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the AOJ. 

Service Connection

Service connection may be established for disability resulting from personal injury suffered or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C. §§ 1110, 1131 (2012). That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d) (2017).

Sleep apnea is not an enumerated “chronic diseases” listed under 38 C.F.R. § 3.309(a); therefore, the presumptive provisions based on “chronic” symptoms in service, and “continuous” symptoms since service at 38 C.F.R. § 3.303(b) do not apply. Walker v. Shinseki, 708 F.3d 1331, 1338-39 (Fed. Cir. 2013).

A veteran is a person who served in the active military, naval, or air service and who was discharged or released under conditions other than dishonorable. 38 U.S.C. § 101(2); 38 C.F.R. § 3.1(d). The term “active military, naval, or air service” includes active duty, any period of active duty for training (ACDUTRA) during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty, and any period of inactive duty training (INACDUTRA) during which the individual concerned was disabled or died from an injury incurred or aggravated in line of duty or from an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident which occurred during such training. 38 U.S.C. § 101(24); 38 C.F.R. §§ 3.6(a)-(d).

National Guard duty is distinguishable from other Reserve service in that a member of the National Guard may be called to duty by the governor of their state. “[M]embers of the National Guard only serve the federal military when they are formally called into the military service of the United States[; a]t all other times, National Guard members serve solely as members of the State militia under the command of a state governor.” Allen v. Nicholson, 21 Vet. App. 54, 57 (2007).

Therefore, to have basic eligibility for veterans benefits based on a period of duty as a member of a state National Guard, a National Guardsman must have been ordered into Federal service by the President of the United States, see 10 U.S.C. § 12401, or must have performed “full-time duty” under the provisions of 32 U.S.C. §§ 316, 502, 503, 504, or 505. Id.

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits. VA shall consider all information and lay and medical evidence of record in a case and when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the weight of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

In considering the evidence of record under the laws and regulations as set forth above, the Board finds that service connection is warranted for obstructive sleep apnea. 

The Veteran has contended that his obstructive sleep apnea first manifested during his period of active duty from January 2002 to January 2003 and that his condition further deteriorated after each of his subsequent deployments. He has also contended that his obstructive sleep is related to exposure to environmental hazards while serving in the Southwest Asia theater of operation. In the alternative, the Veteran has asserted that his obstructive sleep apnea is secondary to his service-connected acquired psychiatric disorder. 

Initially, the AOJ made a favorable finding that the Veteran has a current diagnosis of obstructive sleep apnea. Specifically, the AOJ stated that a private polysomnogram established a diagnosis of sleep apnea as of May 2014. 

The Veteran’s service personnel records for his periods of service from January 2002 to January 2003 and from August 2003 to February 2005 reflect that he was ordered into active Federal service under 10 U.S.C. § 12302. His service personnel records for his period of service from April 2006 to May 2007 reflect that he was ordered in to active Federal service in support of Operation Iraqi Freedom under 10 U.S.C. §§ 12301; 12314. Lastly, the Veteran’s DD Form 214 for his period of service from December 2010 to April 2011 indicates that he ordered into active Federal duty under 32 U.S.C. § 502.

The available service treatment records do not include entrance examinations for the Veteran’s periods of active duty from January 2002 to January 2003 and from August 2003 to February 2005. However, absent evidence to the contrary, it is presumed that an entrance examination is provided prior to all periods of active duty service. See Quirin v. Shinseki, 22 Vet. App. 390, n.5 (2009) (citing Lee v. Brown, 10 Vet. App. 336, 339 (1997) (holding that the presumption of soundness applies even when the record of a veteran’s entrance examination has been lost or destroyed while in VA custody)). In this case, there is no evidence suggesting that the Veteran was not provided an examination prior to his periods of active duty. Therefore, the presumption of soundness applies to the Veteran’s period of active duty service from January 2002 to January 2003 and from August 2003 to February 2005. 

The Veteran’s service treatment records from his periods of active duty service document complaints and treatment for symptoms of a sleep disorder, including snoring and fatigue. For example, an August 2002 health record noted that the Veteran requested sleep medication, and in a December 2003 service treatment record, the Veteran complained of insomnia and feeling tired upon waking from sleep. He also reported that his symptoms had their onset during his tour of duty in Afghanistan in 2002, but he did not seek medical help during his first tour of duty because he was concerned that a diagnosis of PTSD may have a negative impact on his duty in a special zone. It was noted that the Veteran was prescribed sleep aid medication. 

In a May 2004 health record, the Veteran complained of snoring, repeated awakening from sleep, morning headaches, reduced concentration, and mood swings. He stated that his symptoms worsened over the last several years of repeat deployments. He reported awakening mid-sleep and being unable to catch his breath and complained that he required more caffeine and energy drinks to remain attentive during duty hours. The Veteran also reported that his team members complained that his snoring was significant and interrupted their sleep. A physician provided a rule out diagnosis of a sleep disorder and referred the Veteran for a sleep analysis. It was also noted that the Veteran should request that his spouse acquire an oral device through his primary care physician to assist with breathing during sleep and reduce snoring. 

A January 2007 health record noted an assessment of a sleep disorder secondary to anxiety and stress that was related to past and ongoing combat operations. In addition, a June 2007 health record dated approximately two weeks after the Veteran’s period of active duty noted that he complained of increased snoring, daytime sleepiness, and waking with the feeling that he was unable to catch his breath almost nightly. It was also noted that the Veteran reported that his symptoms worsened with each of his deployments. A January 2011 service treatment record noted that the Veteran reported having a history of loud snoring, frequent awakening at night, and daytime fatigue. The assessment was sleep apnea, and it was noted that the Veteran was referred for a sleep study. 

The Veteran’s medical records following his periods of active duty include an April 2014 record that noted he expressed concerns about fatigue, daytime drowsiness, and insomnia during a periodic health assessment for the National Guard. It was also noted that a sleep study was authorized to evaluate possible sleep apnea. Thereafter, a May 2014 private polysomnogram report noted an impression of mild-to-moderate symptomatic obstructive sleep apnea with moderate oxygen desaturations. 

In a July 2014 private medical statement, Dr. M.B. (initials used to protect privacy) opined that the Veteran’s obstructive sleep apnea was as likely as not caused by or aggravated by his multiple deployments as a special operations soldier while serving in Iraq and Afghanistan. However, Dr. B. provided not supporting rationale for his opinion. 

In a January 2017 private medical opinion, Dr. M.C. opined that it was clear from the Veteran’s medical records that he suffered from obstructive sleep apnea while on active duty. He also opined that the Veteran’s obstructive sleep apnea was directly related to PTSD. In so finding, Dr. M.C. provided a detailed review of the Veteran’s medical history and lay statements regarding the onset of his symptoms. He stated that the Veteran’s reported excessive snoring, fragmented sleep, and daytime drowsiness were clear symptoms of sleep apnea that occurred during his active service. In addition, Dr. M.C. stated that peer-reviewed literature showed a causal relationship between PTSD and obstructive sleep apnea. He stated that this causal relationship was not only associated with aged veterans who are morbidly obese with multiple medical problems, but also with young veterans who have a concomitant diagnosis of PTSD. 

During a January 2017 private medical evaluation, the Veteran reported that he experienced a significant deterioration of his sleep hygiene, including symptoms of fatigue and lack of refreshing sleep, after he witnessed soldiers suffer life-threatening injuries from exploding ordnance. The Board notes that the Veteran’s service personnel records reflect that he was awarded the Soldiers Medal for heroism during this incident, which occurred during his active duty service in November 2003. The Veteran further reported having symptoms during his periods of active duty in May 2004 and January 2007, including snoring, repeated awakening with the inability to catch his breath, and increased use of caffeine or energy drinks to remain attentive during duty hours. In addition, he indicated that his team members complained that his snoring interrupted their sleep. 

In an August 2018 VA medical opinion, the examiner opined that the Veteran’s sleep apnea was less likely secondary to and/or aggravated by a diagnosis of PTSD or anxiety. In so finding, the examiner stated that a link between sleep apnea and PTSD or anxiety does not exist per available medical literature. She stated that the most common cause of obstructive sleep apnea in adults is excessive weight gain and obesity, which are associated with the soft tissue of the mouth and throat that can cause the airway to become blocked during sleep. She stated that PTSD or anxiety are unrelated to such a process. 

The Board finds that the private medical opinion from Dr. M.C. probative on this matter, as he reviewed the claims file and considered the Veteran’s lay statements. In reading the opinion as a whole and in the context of the evidence of record, the Board finds that his determination, which addressed the central medical issues in this case, was based on an analysis of the evidence and current medical understanding, and is therefore entitled to probative weight. See Monzingo v. Shinseki, 26 Vet. App. 97, 106 (2012) (providing that an examination is not rendered inadequate where the rationale provided by an examiner “did not explicitly lay out the examiner’s journey from the facts to a conclusion”); Acevedo v. Shinseki, 25 Vet. App. 286, 294 (2012) (stating that medical reports must be read as a whole and in the context of the evidence of record). The Board does acknowledge that Dr. M.C. stated that the Veteran spent 44 years in the highest level of military operations. However, his medical opinion adequately relates the Veteran’s current diagnosis of obstructive sleep apnea to a qualifying period of active duty. In this regard, Dr. M.C. specifically stated that the Veteran was actively deployed on three occasions to Iraq and Afghanistan. He also acknowledged that the Veteran was honorably discharged from active duty on several occasions. Moreover, Dr. M.C. provided a detailed review of the Veteran’s medical history and clearly referenced medical records from the Veteran’s periods of active duty that noted complaints of snoring and fatigue. For example, Dr. M.C. specifically referenced a January 2007 service treatment record that noted the Veteran complained of having worsening sleep problems. He also referenced a June 2007 health record from approximately two weeks after the Veteran’s separation from active duty that noted he reported “increased” snoring, dry mouth or throat, nasal congestion, and waking up almost nightly unable to catch his breath.

In addition, the Veteran is competent to report observable symptoms and events, including the onset of his symptoms of snoring and daytime fatigue, as well as his post-service symptoms. Layno v. Brown, 6 Vet. App. 465 (1994). The Board also notes that the Veteran has medical training as a physician assistant. Moreover, his reports have been consistent throughout the appeal and are supported by the service treatment records from his periods of active duty service. 

The Board does acknowledge that an August 2018 VA examiner provided a negative opinion as to whether the Veteran’s obstructive sleep apnea was caused by his service-connected acquired psychiatric disorder. However, the examiner did not address whether the Veteran’s obstructive sleep apnea was directly related to his military service. 

Based on the foregoing, and resolving any reasonable doubt in favor of the Veteran, the Board finds that service connection for obstructive sleep apnea is warranted.

REASONS FOR REMAND

Regarding the issue of entitlement to an increased evaluation for the Veteran’s service-connected anxiety disorder, a remand is necessary to correct a duty to assist error that occurred prior to the October 2018 rating decision on appeal. In this regard, the Agency of Original Jurisdiction (AOJ) obtained a VA examination in March 2016. However, this examination report did not adequately consider all of the Veteran’s symptomology associated with his service-connected psychiatric disability. For example, the examiner did not provide a response as to whether the Veteran experienced negative alterations in cognitions and mood. Moreover, the examiner stated that it was possible to distinguish the symptoms attributable to each of the Veteran’s anxiety disorder from his alcohol use disorder. However, she only identified overlapping symptoms of the disorders. 

In support of his claim, the Veteran submitted a May 2015 psychiatric assessment from a VA psychiatrist and a January 2017 private medical opinion from Dr. M.C. The Veteran’s representative has asserted that Dr. M.C.’s medical opinion supports the award of at least a 70 percent evaluation. See, e.g., December 2018 correspondence. In July 2018, the AOJ determined that the January 2017 private medical opinion called the adequacy of his March 2016 VA examination into question. However, the VA medical opinions obtained in April 2016 and August 2018 did not address the severity and manifestations of the Veteran’s acquired psychiatric disability. Moreover, the Board notes that the March 2016 VA examination report and private medical opinions did not address the Veteran’s reported memory problems. For these reasons, a remand is necessary to obtain a VA examination. 

The matters are REMANDED for the following action:

1. The AOJ should request that the Veteran provide the names and addresses of any and all health care providers who have provided treatment for his service-connected anxiety disorder. After acquiring this information and obtaining any necessary authorization, the AOJ should obtain and associate these records with the claims file.

The AOJ should also obtain any outstanding VA medical records.

2. The AOJ should afford the Veteran a VA examination to ascertain the severity and manifestations of his service-connected anxiety disorder. Any studies, tests, and evaluations deemed necessary by the examiner should be performed.

The examiner is requested to review all pertinent records associated with the claims file. 

It should be noted that the Veteran is competent to attest to factual matters of which he has first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should report all signs and symptoms necessary for evaluating the disability under the rating criteria. The findings of the examiner should address the level of social and occupational impairment attributable to the Veteran’s anxiety disorder. He or she should specifically identify all symptoms, to include whether the Veteran has avoidance behavior and memory loss.

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important “that each disability be viewed in relation to its history [,]” 38 C.F.R. § 4.1, copies of all pertinent records in the Veteran’s claims file, or in the alternative, the claim file, must be made available to the examiner for review.

 

JESSICA WILLS

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD M. Wulff, Associate Counsel