﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/20 Archive Date: 12/31/20

DOCKET NO. 200109-55702
DATE: December 31, 2020

ORDER

Service connection for sleep apnea is denied.

FINDING OF FACT

The Veteran has been diagnosed with sleep apnea; however, it has not been shown to be etiologically related to service, to include on the basis of exposure to environmental hazards during the Persian Gulf War.

CONCLUSION OF LAW

The criteria for an award of service connection for sleep apnea have not been met. 38 U.S.C. §§ 1110, 1117, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.317.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the United States Army from September 1986 to August 1993, to include service in Southwest Asia from December 1990 to May 1991. His decorations include the Southwest Asia Service Medal with three bronze stars, the National Defense Service Medal, and the Kuwait Liberation Medal.

As previously detailed in the record, the Veteran’s service from April 13, 1992 to August 23, 1993 has been determined to be disqualifying for purposes of payment of VA benefits. Accordingly, only his service prior to that time can be considered for purposes of his entitlement to compensation. See Administrative Decision dated in November 1997; BVA decision dated in March 2020. 

The original rating decision underlying the present appeal was issued in July 2018 by a Department of Veterans Affairs (VA) Regional Office. The Veteran filed a legacy notice of disagreement (VA Form 21-0958) in September 2018, and a statement of the case (SOC) was issued in May 2019. 

The Appeals Modernization Act (AMA) allows VA claimants to opt into the modernized review system by requesting review of a SOC or supplemental SOC (SSOC) issued on or after February 19, 2019 if the opt-in is received within one year of the date of the notification of the underlying rating decision, or 60 days from the issuance of the SOC/SSOC, whichever is later. 38 C.F.R. § 19.2(d)(2). Here, the Veteran elected to opt into the modernized review system in June 2019, after receiving the May 2019 SOC. He requested Higher-Level Review of the evidence considered by the agency of original jurisdiction (AOJ) at the time of the SOC. See VA Form 20-0996 dated in June 2019. Following correction of a pre-decisional duty to assist error, the AOJ confirmed and continued the prior denial in November 2019. The Veteran then timely appealed to the Board of Veterans’ Appeals (Board), requesting direct review of the evidence considered by the AOJ. See VA Form 10182 (Decision Review Request: Board Appeal (Notice of Disagreement)) dated in January 2020. 38 C.F.R. § 20.202(b)(1).

The Board notes that evidence was added to the claims file after the record on appeal closed in November 2019. As the Board is deciding the claim on appeal, it may not consider that evidence in its decision. 38 C.F.R. § 20.300. If he wishes to do so, the Veteran may file a Supplemental Claim and submit or identify the new evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Entitlement to service connection for obstructive sleep apnea is denied.

The Veteran seeks to establish service connection for sleep apnea. He contends that the condition can be attributed to environmental hazards to which he was exposed during his service in the Southwest Asia. In a November 2018 statement, he reported that he was exposed to all kinds of chemicals, burn pits, and burning oil fields during Desert Storm. See also January 2020 Notice of Disagreement.

With the exception of the report of his enlistment examination, the Veteran’s service treatment records are not available for review. In such cases, VA has a heightened duty to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt rule. See Pruitt v. Derwinski, 2 Vet. App. 83, 85 (1992); O’Hare v. Derwinski, 1 Vet. App. 365, 367 (1991).

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999).

Service connection may also be established for a chronic disability manifested by certain signs or symptoms that became manifest either during active service in the Southwest Asia Theater of operations during the Persian Gulf War or to a degree of 10 percent or more not later than December 31, 2021, and which, by history, physical examination, and laboratory tests, cannot be attributed to any known clinical diagnosis. 38 U.S.C. § 1117; 38 C.F.R. § 3.317(a)(1).

The term “Persian Gulf Veteran” means a veteran who served on active military, naval, or air service in the Southwest Asia Theater of operations during the Persian Gulf War. The Southwest Asia Theater of operations includes Iraq, Kuwait, Saudi Arabia, the neutral zone between Iraq and Saudi Arabia, Bahrain, Qatar, the United Arab Emirates, Oman, the Gulf of Aden, the Gulf of Oman, the Persian Gulf, the Arabian Sea, the Red Sea, and the airspace above these locations. 38 C.F.R. § 3.317(d).

A qualifying chronic disability means a chronic disability resulting from any of the following (or any combination of the following): an undiagnosed illness; a medically unexplained, chronic multi-symptom illness that is defined by a cluster of signs or symptoms; or any diagnosed illness that the Secretary determines in regulations prescribed under 38 U.S.C. § 1117(d) warrants a presumption of service-connection. 38 C.F.R. § 3.317(a).

An undiagnosed illness is defined as a condition that by history, physical examination, and laboratory tests cannot be attributed to a known clinical diagnosis. A medically unexplained, chronic multi-symptom illness is one defined by a cluster of signs or symptoms, and specifically includes chronic fatigue syndrome, fibromyalgia, and functional gastrointestinal disorders (excluding structural gastrointestinal diseases). The term medically unexplained, chronic multi-symptom illness means a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs, and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multi-symptom illnesses of partially understood etiology and pathophysiology will not be considered medically unexplained. 38 C.F.R. § 3.317(a).

Objective indications of chronic disability include both “signs,” in the medical sense of objective evidence perceptible to an examining physician, and other non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317(a). Signs or symptoms that may be manifestations of an undiagnosed illness or a medically unexplained, chronic multi-symptom illness include, but are not limited to: (1) fatigue; (2) signs or symptoms involving skin; (3) headache; (4) muscle pain; (5) joint pain; (6) neurologic signs and symptoms; (7) neuropsychological signs or symptoms; (8) signs or symptoms involving the respiratory system (upper or lower); (9) sleep disturbances; (10) gastrointestinal signs or symptoms; (11) cardiovascular signs or symptoms; (12) abnormal weight loss; and (13) menstrual disorders. 38 C.F.R. § 3.317(b).

For purposes of section 3.317, disabilities that have existed for six months or more and disabilities that exhibit intermittent episodes of improvement and worsening over a six-month period will be considered chronic. The six-month period of chronicity will be measured from the earliest date on which the pertinent evidence establishes that the signs or symptoms of the disability first became manifest. 38 C.F.R. § 3.317(a)(4).

Finally, compensation shall not be paid under section 3.317 if there is affirmative evidence that an undiagnosed illness was not incurred during active military service in the Southwest Asia theater of operations during the Persian Gulf War; if there is affirmative evidence that an undiagnosed illness was caused by a supervening condition or event that occurred between the veteran’s most recent departure from active duty in the Southwest Asia theater of operations during the Persian Gulf War and the onset of the illness; or if there is affirmative evidence that the illness is the result of the veteran’s own willful misconduct or the abuse of alcohol or drugs. 38 C.F.R. § 3.317(a)(7).

A layperson is generally incapable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183, 186 (1997), aff’d sub nom., Routen v. West, 142 F.3d 1434 (Fed. Cir. 1998). However, lay evidence can be competent and sufficient to establish a diagnosis of a condition when: (1) a layperson is competent to identify the medical condition; (2) the layperson is reporting a contemporaneous medical diagnosis; or, (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

In essence, lay testimony is competent when it pertains to the readily observable features or symptoms of injury or illness and “may provide sufficient support for a claim of service connection.” Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also 38 C.F.R. § § 3.159(a)(2). A determination as to whether medical evidence is needed to demonstrate that a Veteran presently has the same condition he or she had in service or during a presumptive period, or whether lay evidence will suffice, depends on the nature of the Veteran’s present condition (e.g., whether the Veteran’s present condition is of a type that requires medical expertise to identify it as the same condition as that in service or during a presumption period, or whether it can be so identified by lay observation). See Barr v. Nicholson, 21 Vet. App. 303, 310 (2007).

Thus, medical evidence is not always or categorically required when the determinative issue involves either medical diagnosis or etiology, but rather such may, depending on the facts of the particular case, be established by competent and credible lay evidence under 38 U.S.C. § 1154(a). See Davidson, supra.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. See also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

In the present case, the Board finds that the preponderance of the evidence is against the Veteran’s claim for service connection for sleep apnea, to include on the basis of exposure to environmental hazards.

There is no dispute that the Veteran has a current disability. The evidence clearly reflects that he has been diagnosed with sleep apnea. See December 2017 sleep study; March 2018 VA examination.

Nor is there any real dispute that the Veteran may have been exposed to environmental hazards during his service in Southwest Asia. See, e.g., Board remand dated in March 2020.

As to the nexus, or link, between the Veteran’s current disability and service, the record shows that he reported in May 2015 that he had been suffering sleep disturbance for the past four to five months due, in part, to depression and anxiety. He reported that his wife told him that he snored. He indicated that he had excess “sedation” during the day, although he was not aware of choking or gasping.

On pulmonary consultation in June 2015, the Veteran reported difficulty staying asleep for at least 18 years. He related that his wife had noticed that he snored loudly, but that she had not reported that he stopped breathing in his sleep. His past medical history was noted to be significant, in part, for sinus congestion. He reported that his sinuses were congested “all the time” and that he was unable to breathe through his nose. The examining clinician recommended evaluation and treatment of his nasal obstruction by an ear, nose, and throat specialist, followed by a sleep study.

In August 2015, the Veteran reported that he had a severe nasal obstruction; that for years his nose had stayed “stopped up” 90 percent of the time; that he was unable to breath through his nose; that he had to “mouth breathe” at night; and that he had symptoms of obstructive sleep apnea. As noted, sleep apnea was subsequently diagnosed in December 2017.

The Veteran underwent sleep apnea and Environmental Exposure Gulf War VA examinations in March 2018. After examining the Veteran and reviewing the record, the examiner found that the Veteran had sleep apnea that met the criteria for a diagnosable chronic multi-symptom illness with a partially explained etiology. The examiner opined that it was less likely than not that the Veteran’s sleep apnea was caused by or related to Gulf War environmental exposure, explaining that the condition was more likely than not related to a developmentally narrow oropharyngeal airway, often with superimposed elevation of BMI (body mass index) (creating encroachment of the airway with fatty soft tissues) and/or natural aging (encroaching the airway with floppy soft tissues).

In September 2018, the Veteran submitted excerpts from articles to support the proposition that “many neurotoxicants were present” in the Southwest Asia theater of operations during the Persian Gulf War and that carbofuran was positively associated with sleep apnea.

In September 2019, the March 2018 VA examiner reviewed the expanded record, including the article excerpts submitted by the Veteran, for purposes of providing an addendum opinion. After reviewing the record, the examiner confirmed her prior opinion that it was less likely than not that the Veteran’s sleep apnea was caused by Gulf War exposures during service. As to the articles specifically, and the Veteran’s reports of exposure, the examiner observed that “association does not equal causation.” 

The Veteran’s attorney has taken issue with the adequacy of the VA examiner’s opinion, asserting that the examiner only addressed the medical literature, without discussing the Veteran at all. However, a fair reading of both the original opinion and the addendum in concert indicates otherwise. The record shows that the examiner conducted an in-person examination of the Veteran, reviewed his claims file, including his reports of in-service exposures and the treatise evidence he provided, and arrived at a conclusion based on the universe of available data, with articulated reasons therefor. Under the circumstances, the Board finds the opinion probative. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008); see also Monzingo v. Shinseki, 26 Vet. App. 97, 105 (2012) (there is no requirement that a medical examiner comment on every favorable piece of evidence in a claims file); Acevedo v. Shinseki, 25 Vet. App. 286, 293 (2012) (noting that the law imposes no reasons-or-bases requirement on examiners). There are no contrary medical opinions of record.

Although the Veteran contends that his sleep apnea is related to his military service, the record does not reflect that he is competent to provide a nexus opinion regarding this issue. The issue is medically complex, as it requires knowledge of multiple anatomical systems. Therefore, it is outside the competence of the Veteran in this case as the record does not show that he has the medical training or experience to make such a determination. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007); see also Kahana v. Shinseki, 24. Vet. App. 428 (2011). 

Entitlement to compensation under 38 C.F.R. § 3.317 is only applicable when a Veteran’s disability by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. In the Veteran’s case, his sleep apnea has been attributed to a known clinical diagnosis of at least partially understood etiology. See March 2018 Environmental Exposure Gulf War VA Examination. As such, he is not entitled to compensation under 38 C.F.R. § 3.317.

In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the  

Veteran’s claim, the doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7. The appeal must be denied.

 

 

DAVID A. BRENNINGMEYER

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board B. Willis, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.